INDIANA & MICHIGAN ELECTRIC COMPANY and Indianapolis Power & Light Company, Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.

Nos. 82–1733, 82–1738.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 3, 1984.

Decided May 11, 1984.

Bryan G. Tabler, Barnes & Thornburg, Indianapolis, Ind., for petitioners.

David T. Buente, U.S. Dept. of Justice, Washington, D.C., for respondent.

Before WOOD, ESCHBACH and POSNER, Circuit Judges.

POSNER, Circuit Judge.

In 1979 the Indiana Air Pollution Control Board submitted to the U.S. Environmental Protection Agency a revision of its plan for compliance ("state implementation plan") with air quality standards that the EPA had established pursuant to the Clean Air Act of 1970, as amended, 42 U.S.C. §§ 7401 et seq. Indiana's revised plan established a ceiling on emissions of sulphur dioxide but also provided that a source would be considered to be in compliance if its daily emissions, when averaged over thirty days, did not exceed the ceiling. This was in recognition of the fact that the sulphur content of the coal consumed in a coal-burning electrical generating plant can vary substantially from day to day. However, when on March 12, 1982, the EPA approved Indiana's revised plan, it stated that it was "taking no action on the 30-day averaging compliance concept." 47 Fed.Reg. 10823. Two Indiana utilities have petitioned for review of this determination. Although the petition for review challenges other aspects of the EPA's order of March 12 as well, the other challenges became moot while the review proceeding was pending.

The EPA questions our jurisdiction. It says the utilities should have filed their petition in a district court, not this court. Although section 307 of the Clean Air Act, 42 U.S.C. § 7607(b)(1), gives the courts of appeals jurisdiction of "review of the Administrator's action in approving or promulgating any implementation plan," including a revised plan, section 304 provides that "any person may commence a civil action on his own behalf ... against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator .... The district courts shall have jurisdiction ... to order the Administrator to perform such act or duty ...." 42 U.S.C. § 7604(a). The utilities' contention that the Administrator had no discretion to refuse to act on the 30-day averaging provision brings the petition for review within the literal reach of section 304, but we do not think the section was intended to cover cases such as this, where a complaint about agency inaction is embedded in a challenge to the validity of an implementation plan. Our reasons are as follows:

1. The ground for giving jurisdiction over agency-inaction cases to the district courts rather than the courts of appeals is that when an agency fails to act there may be no record for the court of appeals to review. Evidence will have to be taken to discover the nature and circumstances of, and the reasons for, the agency's (non)action, and district courts are better equipped to find facts than courts of appeals are. See Currie, Air Pollution: Federal Law and Analysis § 9.11, at p. 9–33 (1981). That is not a problem where the failure to act is announced in an agency order based on an administrative record, as

it was here. The EPA's order and record make clear the nature and background of its refusal to act on the 30-day averaging provision. There is no need to create a record for review. We may thus invoke the judge-made presumption in favor of court of appeals review in doubtful cases, a presumption based on the fact that district court review adds another layer to the review process with little gain to the accuracy of the ultimate determination if there are no additional facts to be found. See, e.g., *Foti v. Immigration & Naturalization Service*, 375 U.S. 217, 232, 84 S.Ct. 306, 315, 11 L.Ed.2d 281 (1963); *Rockford League of Women Voters v. Nuclear Regulatory Comm'n*, 679 F.2d 1218, 1221 (7th Cir.1982); *Illinois v. Schweiker*, 707 F.2d 273, 276 (7th Cir.1983); *Lorion v. Nuclear Regulatory Comm'n*, 712 F.2d 1472, 1478 (D.C.Cir.1983), cert. granted, —— U.S. ——, 104 S.Ct. 1676, 80 L.Ed.2d 52 (1984).

2. To hold that section 304 governs this challenge would mean that in many Clean Air Act matters two judicial proceedings, proceeding simultaneously in different courts, would be necessary for complete review of one administrative order. It is a fluke that the utilities' other challenges to the March 12 order, challenges that *had* to be brought in the court of appeals, are moot. Judicial economy would be disserved by having different aspects of the same order reviewed in two different courts at once, especially where (as in this case) the agency's inaction relates to an exception to a plan that was approved in other respects, so that the issues of inaction and of approval are entwined.

3. The previous point establishes a textual basis for classifying this as a section 307 case. Section 304 empowers the district court "to order the Administrator to perform such act or duty ...." The utilities are not asking that the EPA be ordered to act on the 30-day compliance provision. They are asking that the EPA's order adopting the revised state plan without the provision be set aside. That is section 307 relief.

■ For these reasons we hold that judicial review of an EPA order approving or promulgating, in whole or part, a state implementation plan, original or revised, lies in the courts of appeals under section 307 even when the challenge to the order includes a contention that the EPA failed to do something that it had no discretion not to do. See *City of Seabrook v. Costle*, 659 F.2d 1371, 1373 (5th Cir.1981); Currie, *supra*, § 9.10, at p. 9–30; cf. *Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d 654, 658–61 (D.C.Cir.1975); *Anaconda Co. v. Ruckelshaus*, 482 F.2d 1301, 1304–05 (10th Cir.1973); but see *Sierra Club v. Ruckelshaus*, 344 F.Supp. 253, 254 (D.D.C.1972), aff'd by evenly divided Court *sub nom. Fri v. Sierra Club*, 412 U.S. 541, 93 S.Ct. 2770, 37 L.Ed.2d 140 (1973). And so we can turn to the merits.

■ Section 110(a)(3)(A) of the Clean Air Act provides that "the Administrator shall approve any revision of an implementation plan ... if he determines that it meets the requirements [of the Act] and has been adopted by the State after reasonable notice and public hearings." Although the section does not mention partial approval, we have held that the Administrator does have the power to approve a revised plan in part. *Public Service Co. v. EPA*, 682 F.2d 626, 632 (7th Cir.1982). However, nothing in the Act or in any cases we have found suggests that the EPA, when asked to approve a revised plan, can, without pausing to decide whether a limitation in the plan that its authors may have thought critical to its soundness has any merit at all, approve the plan minus the limitation. The plan might be vastly better with than without the limitation, and the agency cannot determine that without examining the limitation. Even if it is not vastly better, section 110(a)(3)(A) requires the Administrator to approve a revised plan, limitations and all, if he determines that it meets the requirements of the Clean Air Act; and he cannot make that determination if he refuses to evaluate the limitations.

It is not as if the EPA in this case had rejected the 30-day provision as violating the requirements of the Act. Whether it could do this under its implied power of partial approval, if the result would be to make the revised plan more stringent than the previous regulation, is not an issue we need decide today. The issue here is different, and simpler. It is whether the agency can effectively disallow an integral part of a plan provision without determining that the part violates the requirements of the Act. We do not think it can. Even if the statutory language is not an insuperable obstacle to concluding that it can, we think a state is entitled to have its plans evaluated in the form submitted. If limitations or exceptions that seemed important to the state when it prepared a plan are to be rejected, that should be done on the merits, and not as a byproduct of regulatory delay. Of course, if some provisions in a plan are independent of others, there is no reason why the agency must consider all of the provisions at the same time; considering them at separate times will affect only the timing of the restrictions embodied in the plan, and not the severity of those restrictions. But to impose the restriction, and defer action indefinitely on a meliorating exception, is to put into effect a more stringent regulation than the state wanted, without deciding whether the exception is unlawful. Until that decision is made the approval process within the agency is incomplete.

We are sympathetic to the EPA's argument that Indiana's proposal of a 30-day averaging provision raised questions that the agency simply could not resolve on the spot. But it does not follow that it had to put the revised plan into effect immediately. Maybe, if the EPA had made a determination that putting part of the proposal into effect was better than waiting till the whole thing could be evaluated, we could uphold the determination, though this would involve stretching the statutory language a bit. The original plan that the revised plan was intended to replace had been set aside by the Indiana courts when the EPA approved the revised plan in its March 12 order, and maybe therefore an intolerable regulatory gap would have been created if approval of the revised plan had been deferred till the agency could get around to determining the validity of the 30-day averaging provision. Although there is no hint of any such concerns in the March 12 order, our action today in setting aside the relevant portion of that order is not intended to foreclose the agency from reinstating it upon a proper showing of necessity to do so.

We thus set aside so much of the EPA's order of March 12, 1982, as approved the sulphur dioxide emission ceiling in Indiana's revised plan. To that extent the petition for review is granted; in all other respects it is dismissed as moot.

So ORDERED.