**NATURAL RESOURCES DEFENSE COUNCIL, et al., Plaintiffs,**

**v.**

**William K. REILLY, In His Capacity as Administrator of the United States Environmental Protection Agency, et al., Defendants.**

**Civ. A. No. 3:92CV50.**

United States District Court,
E.D. Virginia,
Richmond Division.

April 1, 1992.

Willard Todd Benson, Press, Jones, Wechter & Stoneburner, Richmond, Va., Howard I. Fox, Sierra Club Legal Defense Fund, David D. Doniger, Natural Resources Defense Council, Washington, D.C., for Natural Resources Defense Council/plaintiff and for Center for Auto Safety/plaintiff.

Mary Lloyd Sinnott, John Daniel Epps, Leclair, Ryan & Joynes, Richmond, Va., James Keith Ausbrook, R. Timothy Columbus, Michael D. Sherman, Collier, Shannon and Scott, Washington, D.C., for East Coast Oil Corporation/consolidated plaintiff and for Sheetz Incorporated/consolidated plaintiff.

Douglas W. Morris, Alice Crowe, American Petroleum Institute, Washington, D.C., for American Petroleum Institute/consolidated plaintiff.

Debra Jean Prillaman, Asst. U.S. Atty., Richmond, Va., David J. Kaplan, U.S. Dept. of Justice, Environmental & Natural Resources Div., Washington, D.C., for William K. Reilly, Adm'r, U.S. Environmental Protection Agency/defendant.

George A. Somerville, Anthony F. Troy, Mays & Valentine, Richmond, Va., Susan H. Longley, American Coalition for Traffic Safety, Inc., Washington, D.C., for American Coalition for Traffic Safety, Inc./amicus.

Thomas Earl Patton, Richard A. Penna, Jack D. Franks, Schnader, Harrison, Segal & Lewis, Washington, D.C., Charles H. Lockwood, Ass'n of Intern. Auto. Mfrs., Arlington, Va., for Ass'n of Intern. Auto. Mfrs., Inc./intervenor-defendant.

Kirk David McQuiddy, Ann Adams Webster, James W. Morris, III, Morris & Morris, Richmond, Va., Kenneth S. Geller, Erika Z. Jones, Evan M. Tager, Mayer, Brown & Platt, Washington, D.C., for Motor Vehicle Mfrs. Ass'n/intervenor-defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is before the Court on the defendants' motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure. For the reasons discussed below, the defendants' motion to dismiss will be GRANTED, and the case will be DISMISSED WITHOUT PREJUDICE.

### PROCEDURAL BACKGROUND

The plaintiffs filed suit against the Administrator of the Environmental Protection Agency ("EPA")[1] on January 24, 1992. The plaintiffs seek an order forcing the Administrator to promulgate standards requiring light-vehicles to be equipped with onboard refueling vapor recovery ("ORVR") systems by the fourth model year after promulgation of the standards. A hearing on the plaintiffs' motion for injunctive relief or summary judgment was set for March 30, 1992. On March 23, 1992, the defendants filed a motion to dismiss, claiming that exclusive jurisdiction for the present action rests with the United States Court of Appeals for the District of Columbia pursuant to section 307(b)(1) of the Clean Air Act ("CAA" or "the Act"), 42 U.S.C. § 7607(b)(1). The parties were heard on the motions on March 30, 1992. Based on the briefs and the hearing, the Court determined that the Administrator had taken final action regarding a standard having nationwide effect, and, as such, that exclusive jurisdiction rests with the United States Court of Appeals for the District of

---

1. By Orders dated March 5, 1992, the Association of International Automobile Manufacturers, Inc. ("AIAM"), and the Motor Vehicle Manufactures Association ("MVMA") were permitted to intervene in this action as party defendants.

Columbia pursuant to section 307(b)(1) of the CAA, 42 U.S.C. § 7607(b)(1).[2]

FACTUAL BACKGROUND

The Court provides the following as a very general overview of the CAA and the issues specific to the instant case. The CAA, 42 U.S.C. §§ 7401–7671q, provides a comprehensive program for controlling and improving the nation's air quality. The statute generally provides for a division of labor between the states and the federal government. EPA is responsible for identifying pollutants that endanger the public health or welfare and then determining what concentrations of those pollutants are safe. Once these determinations are made, they are promulgated as National Ambient Air Quality Standards ("NAAQS"). CAA §§ 108, 109, 42 U.S.C. §§ 7408, 7409. Each state then has the primary responsibility for ensuring that its ambient air meets the NAAQS. CAA § 107(a), 42 U.S.C. § 7407(a). To this end, each state is required to draft a state implementation plan ("SIP") that "provides for implementation, maintenance, and enforcement" of the standards within its borders. CAA § 110(a)(1), 42 U.S.C. § 7410(a)(1).

One of the NAAQS established by EPA governs the acceptable level of ozone. 40 C.F.R. Part 50. Ozone, if found in sufficient concentrations in the lower atmosphere, poses serious health hazards. Among the precursors required for the formation of ozone are volatile organic compounds ("VOCs"). One of the sources of VOCs is the gasoline vapors that are forced out of gas tanks during the refueling process. A reduction in the release of these VOCs would, in turn, reduce the presence of ozone in the lower atmosphere.[3]

As a result, the CAA has a number of provisions addressing the emission of gasoline vapors during refueling. There are two recognized methods of recapturing refueling vapor emissions: (1) vehicle-based, or ORVR, systems; and (2) retail outlet, or "Stage II," systems. The Act, provides, at least potentially, for the use of both of these systems to control the emission of refueling vapors.

The CAA requires the state to submit SIPs mandating Stage II systems for "non-attainment" areas (those areas where the ozone NAAQS have not been attained) that are classified as "Moderate," "Serious," "Severe," or "Extreme." See, CAA §§ 182(b)(3)(A), (c)–(e), 42 U.S.C. §§ 7511a(b)(3)(A), (c)–(e).[4] Stage II controls consist of a collar placed around the gasoline station refueling hose and nozzle that forms a secure fit with the gasoline tank opening. See 52 Fed.Reg. 31,170–73 (Aug. 19, 1987). This prevents the release of VOCs by capturing the vapors emitted and channeling them into the service station storage tank for eventual reuse. The CAA also addresses the use of ORVR systems. See CAA § 202(a)(6), 42 U.S.C. § 7521(a)(6). An ORVR system would consist of a charcoal-filled canister connected to the fuel tank, a flexible fuel tank bladder, or some other alternative control technology that would be installed in the vehicle and would prevent the escape of gasoline vapors during refueling. The captured vapors would then be recycled to the engine during vehicle operation.

ORVR systems were first contemplated as an alternative to Stage II systems 15 years ago. In 1977, Congress directed the Administrator to "determine the feasibility and desirability of requiring new motor vehicles to utilize onboard hydrocarbon control technology which would avoid the necessity of gasoline vapor recovery of uncontrolled emissions emanating from the refueling of motor vehicles." 1977 CAA Amendments, Pub.L. No. 95–95 § 202(a)(6) (1977). The 1977 statute provided that if

---

2. Because the Court has determined that it lacks subject matter jurisdiction, it has no authority to consider the merits of the plaintiffs' claim.

3. Gasoline vapors have also been shown to contain benzene, a known cause of leukemia and other cancers in humans, as well as other suspected carcinogens.

4. Under the Act, a state must require gasoline stations to complete the installation of Stage II devices between six months and two years after the Stage II requirement is adopted by the state. CAA § 182(b)(3)(B), 42 U.S.C. § 7511a(b)(3)(B).

the Administrator found it feasible and desirable to employ onboard technology, then the Administrator was to promulgate regulations, after consultation with the Secretary of Transportation regarding the safety of the technology. *Id.* Pursuant to this congressional directive, EPA studied ORVR systems, and, in 1980, "tentatively determined that onboard control for light-duty vehicles was technically feasible." 52 Fed.Reg. 31,163 (Aug. 19, 1987); *see* "Recommendation of Feasibility for Onboard Refueling Loss Control," U.S. EPA, OAR, OMDAPC (Feb.1980).

At the beginning of the Reagan Administration, as part of a broad regulatory "relief" initiative, EPA suspended activity on ORVR systems for four years. 46 Fed. Reg. 21,629 (Apr. 13, 1981). In 1984, EPA resumed its examination and prepared a draft study entitled "Evaluation of Air Pollution Regulatory Strategies for Gasoline Marketing Industry." *See* 52 Fed.Reg. 31,164 (Aug. 19, 1987). This study analyzed the amount of emissions generated by the distribution of gasoline and the health risks associated with those emissions. The study also estimated the costs, emissions reductions, health risk reductions, and economic impact of various control techniques, including Stage II and ORVR systems. EPA then sought, received, and reviewed public comments on its analysis. In August of 1987, EPA proposed regulations to establish a "vehicle-based program to control refueling emissions." 52 Fed.Reg. 31,162 (1987). EPA concluded that onboard systems were "the most desirable and appropriate means of addressing the environmental concerns," were "more desirable than Stage II," were "the most effective refueling control technology and would provide the greatest overall benefits for public health and welfare." *Id.* at 31,162, 31,164, 31,181, and 31,182 (1987). Rulemaking, however, was never completed, and a final rule has never been promulgated.

In 1990, as part of the amendments adopted for the CAA, Congress revised the existing law—section 202(a)(6) of the CAA, 42 U.S.C. § 7521(a)(6). Section 202(a)(6), as amended, provides, in pertinent part:

Onboard vapor recovery. Within one year after the date of the enactment of the Clean Air Act Amendments of 1990 [enacted Nov. 15, 1990], the Administrator *shall, after consultation with the Secretary of Transportation regarding the safety* of vehicle-based ("onboard") systems for the control of vehicle refueling emissions, *promulgate standards* under this section requiring that new light-duty vehicles manufactured beginning in the fourth model year after the model year in which the standards are promulgated and thereafter shall be equipped with such systems.

CAA § 202(a)(6), 42 U.S.C. § 7521(a)(6) (emphasis added). It is this section that forms the basis of the plaintiffs' suit. In particular, the plaintiffs contend that section 202(a)(6) creates a nondiscretionary duty to promulgate standards requiring new vehicles to be equipped with ORVR systems. The defendants, however, contend that the section leaves the Administrator with discretion to determine the desirability of those standards based on safety considerations.

Pursuant to section 202(a)(6), the EPA has consulted with the Department of Transportation ("DOT") concerning the safety of ORVR systems. In particular, the National Highway Traffic Safety Administration ("NHTSA"), the safety branch of DOT, compiled a report detailing its concerns over the safety of ORVR systems. *See* National Highway Traffic Safety Administration (Enforcement Office), U.S. Department of Transportation, "An Assessment of the Safety of Inboard Refueling Vapor Recovery Systems" (July 1991), Appendix G, Brief of Intervenor-Defendants in Opposition to Plaintiffs' Requested Relief. NHTSA concluded that charcoal canister ORVR systems inherently increase the risk of fire and would, therefore, have a negative impact on auto safety. *Id.; see also* Letter from Jerry Ralph Curry, NHTSA Administrator, to William G. Rosenberg, Asst. Administrator for Air and Radiation, EPA (Oct. 31, 1991), Appendix B, Brief of Intervenor-Defendants in Opposition to Plaintiffs' Requested Relief.

EPA subsequently published a Public Notice announcing the availability of the NHTSA Safety Report and a public hearing to begin on September 26, 1991, "concerning the safety issues associated with on-board refueling control systems." 56 Fed. Reg. 43,682 (Sept. 3, 1991). The notice also indicated that comments would be received for 30 days after the conclusion of the hearing. *Id.*

At the conclusion of this process, EPA determined that ORVR systems should not be required and issued a press release to that effect on March 13, 1992. On March 27, 1992, pursuant to the rulemaking record developed during EPA's consideration of ORVR systems, a final action was issued. The final action sets forth the Agency's legal conclusions and its finding that ORVR systems should not be required because they pose an unreasonable risk to public safety.

DISCUSSION

As a court of limited jurisdiction, this Court must, before it considers the merits of the plaintiffs' claim, determine whether or not it has jurisdiction to hear that claim. The CAA establishes a split scheme of exclusive jurisdictions; exclusive jurisdiction will lie with either the district court or the court of appeals depending on the nature of the underlying challenge. The plaintiffs have brought the instant challenge pursuant to the "citizens suit" provision of the CAA. CAA § 304(a)(2), 42 U.S.C. § 7604(a)(2). That provision provides, in pertinent part:

> Authority to bring civil action; jurisdiction. Except as provided in subsection (b), any person may commence a civil action on his own behalf—
>
> .   .   .   .   .

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this Act which is *not discretionary....*

*Id.* (emphasis added). The plaintiffs claim that this Court has exclusive jurisdiction pursuant to this section because the very essence of their claim is that the Administrator has failed to perform an act, the promulgation of standards, which he has a nondiscretionary duty to perform under the terms of section 202(a)(6).

The defendants, in contrast, assert that even if it is assumed, *arguendo*, that this Court originally had jurisdiction under section 304(a)(2), that jurisdiction was divested when the Administrator took "final action" on March 27, 1992. Once final action has been taken, they argue, section 307(b)(1) becomes the operative jurisdictional provision, and it vests exclusive jurisdiction in the United States Court of Appeals for the District of Columbia for any challenge to a final action with national applicability. Section 307(b)(1) provides, in pertinent part:

> Judicial review. (1) A petition for review of actions of the Administrator in promulgating ... any standard under section 202 [42 U.S.C. § 7521] ... or any other nationally applicable regulations promulgated, *or final action* taken, by the Administrator under this Act may be filed only in the United States Court of Appeals for the District of Columbia....

CAA § 307(b)(1), 42 U.S.C. § 7607(b)(1) (emphasis added).[5]

Understandably, the parties spend a great deal of their briefs discussing whether or not the plaintiffs' suit is *a challenge to* final action.[6] While this debate correct-

---

5. *See also* CAA § 307(e), 42 U.S.C. § 7607(e) ("Nothing in this Act shall be construed to authorize judicial review of regulations or orders of the Administrator under this Act, except as provided in this section.")

6. The plaintiffs have never claimed that EPA's announced decision does not constitute final action. Rather, they claim that accepting EPA's jurisdictional argument leads to the anomalous result that EPA will be able to destroy jurisdiction with even less "action" than occurred in the instant case: "Even a simple letter to plaintiff

["announcing a decision not to take the requested action"] would have this effect, since a letter can constitute final action for purposes of § 307(b)(1)." Plaintiffs' Reply Brief, at 4 n. 2 (citing *Harrison v. PPG Indus., Inc.,* 446 U.S. 578, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980)). This is not, however, the case before the court; nor is it analogous. One of the important factors in the instant case is the existence of a detailed record. *See infra.* Since the Court is not presented with a final action for which there is no underlying record, it expressly de-

ly tracks the operative jurisdictional language, it is not a terribly useful tool for resolving the issue before the Court. Distinctions between action and inaction are slippery, at best. It is semantically easy to characterize this case as a case of either action or inaction. The plaintiffs argue that this case is not a challenge to EPA action, or even a case of entwined action and inaction; they challenge "only a refusal to act, announced after this Court had properly acquired jurisdiction." Plaintiffs' Reply Brief, at 8. In some sense, of course, the plaintiffs are correct. From the beginning, their challenge has been to EPA's failure to do what they argue it is required to do—promulgate standards requiring ORVR systems. According to the plaintiffs, the only action that EPA has taken is to declare that it would continue to do what it has always been doing—failing to act in accordance with the requirements of the Act. At the same time, however, the defendants' characterization is also correct. The defendants argue that EPA has now taken the kind of action envisioned by section 307(b)(1)—they have officially stated their decision with regard to ORVR systems and have formulated a record by which that decision can be reviewed.

The answer to the jurisdictional question lies not in determining which of the parties' characterizations makes better sense semantically, but in determining which better satisfies the policies underlying the CAA's jurisdictional scheme. There are two predominant, relevant policy considerations, each of which supports dismissing the instant case. The first of these is the existence of an underlying administrative record. As explained by the Seventh Circuit: "The ground for giving jurisdiction over agency-inaction cases to the district courts rather than the courts of appeals is

that when an agency fails to act there may be no record for the court of appeals to review." *Indiana & Michigan Electric Co. v. EPA*, 733 F.2d 489, 490 (7th Cir. 1984). The court went on to conclude that "[t]hat is not a problem where the failure to act is announced in an agency order based on an administrative record, as it was here. The EPA's order and record make clear the nature and background of its refusal to act." *Id.* at 491. As a result, the court "invoke[d] the judge-made presumption in favor of court of appeals review in doubtful cases, a presumption based on the fact that district court review adds another layer to the review process with little gain to the accuracy of the ultimate determination if there are no additional facts to be found." *Id.; see also Bethlehem Steel Corp. v. EPA*, 782 F.2d 645, 655–56 (7th Cir.1986) (finding that the district court had exclusive jurisdiction based in part on the need to compile a record).[7]

The second relevant basis for the CAA's jurisdictional scheme is the concern for judicial economy; *to wit*, the risk of duplicative or piecemeal litigation, and the risk of contradictory decisions. The problem, from the standpoint of the plaintiffs, is that their challenge to the failure to act necessarily implicates the final action taken. *See Abramowitz v. EPA*, 832 F.2d 1071, 1076 (9th Cir.1987); *Bethlehem Steel*, 782 F.2d at 655, 657 (finding that there was no jurisdiction in the court of appeals because the citizens group had no complaint with the final action taken and did not seek to vacate it or bar its enforcement). If this Court were to find that the Administrator failed to perform a nondiscretionary function by not promulgating standards requiring ORVR systems, it would necessarily be finding that the Administrator's final action violated the CAA and must be re-

---

clines to express an opinion with regard to that hypothetical case.

7. The plaintiffs have argued that the existence of a record is irrelevant because the instant suit raises a pure question of law. The argument, however, misperceives the import and rationale of the presumption. There is a presumption in favor of the exclusive jurisdiction of the courts of appeals (and of the Court of Appeals for the

District of Columbia if the final action is nationally applicable) because review by the court of appeals eliminates an unnecessary layer of review and promotes uniformity in interpretation. The presumption does not come into being because there is a record. Rather, the existence of a record is one factor to be considered in determining whether the presumption has been overcome.

versed. The reversing of a final action, however, is the type of relief obtained in a court of appeals, not a district court. *See* CAA § 307(d)(9), 42 U.S.C. § 7607(d)(9); *Bethlehem Steel*, 782 F.2d at 656 (finding that the court of appeals did not have jurisdiction, in part, because "[t]he remedy sought by the citizens group is not to rescind or modify the rule that the EPA has adopted").

At the same time, maintaining the instant suit creates the potential for simultaneous suits and piecemeal review. The plaintiffs admitted at the hearing that, as a matter of security, they will have to file suit in the Court of Appeals for the District of Columbia "within sixty days from the date notice of ... action appears in the Federal Register." *See,* CAA § 307(b)(1), 42 U.S.C. § 7607(b)(1). If a suit is filed in the Court of Appeals for the District of Columbia, the confusion and waste that has concerned the courts would be manifest in this case. *See, e.g., Abramowitz*, 832 F.2d at 1076; *Indiana & Michigan Electric*, 733 F.2d at 491; *City of Seabrook v. Costle*, 659 F.2d 1371, 1373 (5th Cir.1981). It is unclear whether, under the plaintiffs' theory, the Court of Appeals for the District of Columbia would or would not have jurisdiction to consider the legality of the Administrator's final action. If the Court of Appeals for the District of Columbia has jurisdiction to consider the legality of the action under the CAA, then it will effectively be considering exactly the same issue the plaintiffs are asking this Court to decide— whether the Administrator has discretion not to promulgate regulations requiring ORVR systems. If, on the other hand, the

Court of Appeals for the District of Columbia is barred from considering the legality of the Administrator's decision because of this Court's *exclusive* jurisdiction, that final action would be subject to piecemeal review.[8] *See, e.g., Abramowitz*, 832 F.2d at 1076; *Indiana & Michigan Electric*, 733 F.2d at 491; *City of Seabrook*, 659 F.2d at 1373.

The plaintiffs also argue that the Court's decision will have the effect of granting EPA an absolute right of removal, and, just as importantly, will provide EPA with a mechanism for further delaying cases that are, at heart, challenges to EPA's previous delays. While the Court is not unsympathetic to the plaintiffs' concerns,[9] they prove little more than that Congress was, as always, forced to choose among second best options. There are unquestionable costs associated with the jurisdictional scheme adopted by Congress, but there are also distinct benefits derived from that scheme. Assumedly, Congress weighed those costs and benefits and determined that the present scheme presented the most desirable alternative.[10]

---

**8.** The Administrator's authority under the Act not to promulgate standards will, almost certainly, not be the plaintiffs' sole challenge to the final action. They will also, at a minimum, challenge the final action on the ground that the finding of an unreasonable safety risk was "arbitrary, capricious, and an abuse of discretion." *See* CAA § 307(d)(9)(A); 42 U.S.C. 7607(d)(9)(A).

**9.** This is not to say, however, that the Court adopts the plaintiffs' view on the effect of its decision. The Court's decision is not nearly as broad as the plaintiffs have characterized it.

**10.** The plaintiffs also claim that their arguments in favor of retaining jurisdiction are supported

by *Sierra Club v. Ruckelshaus,* 602 F.Supp. 892 (N.D.Cal.1984). The Court, however, agrees with the defendants that this case is clearly distinguishable. The Court in that case retained jurisdiction to enforce an order it had entered before the agency's final action. *Id.* at 900–01 ("[T]he only issues presently before this Court are (1) whether defendants are in contempt of this Court's Order, and if so, (2) what actions defendants must take in order to purge the contempt."). The only relevant case law that the Court has seen supports the kind of divestiture of jurisdiction found in the instant case. *See City of Seabrook,* 659 F.2d at 1373.