**COMMONWEALTH of VIRGINIA,
et al., Plaintiffs,**

v.

**UNITED STATES of America,
et al., Defendants.**

Civil A. No. 3:95CV21.

United States District Court,
E.D. Virginia,
Richmond Division.

June 12, 1995.

538

Roger L. Chaffe, John Richard Butcher, John Paul Woodley, Jr., Mary Jo Leugers, Virginia Office of Attorney General, Richmond, VA, John P. Schmitz, Andrew J. Pincus, Charles A. Rothfeld, Thomas DiLenge, Mayer, Brown & Platt, Washington, DC, for Com., George Allen, Governor of the Commonwealth of Virginia.

Debra Jean Prillaman, Office of U.S. Attorney, Richmond, VA, David J. Kaplan, U.S. Department of Justice, Environmental & Natural Resources Div., Washington, DC, for U.S., United States Environmental Protection Agency, United States Department of Transportation, Carol M. Browner, Administrator of the United States Environmental Protection Agency, Frederico Pena, Secretary of Transportation.

David Sanburg Bailey, Washington, DC, James Tripp, Environmental Defense Fund, New York City, for Lawyers' Committee for Civil Rights Under Law Inc., Environmental Defense Fund, Kathleen F. Derricott, Clifton E. Derricott, Andre L. Brown, Caleata Johnson, Gwen Hedgepath.

Katherine Ewing Slaughter, Southern Environmental Law Center, Charlottesville, VA, for American Lung Association of Northern Virginia, American Lung Association of Virginia, Audubon Naturalist Society, Citizens for Sensible Power, King George Environmental Association, Mountain Heritage Alliance, Virginia Citizen Action.

Charles Douglas Welty, Arlington, VA, Daniel J. Popeo, David A. Price, Washington Legal Foundation, Washington, DC, for Washington Legal Foundation.

## MEMORANDUM OPINION

SPENCER, District Judge.

In this lawsuit, the Commonwealth of Virginia and its Governor (collectively, "Virginia") bring constitutional challenges to certain provisions of the Clean Air Act, 42 U.S.C.A. §§ 7401–7671q (West 1983 and Supp.1995) ("the CAA"). This case is currently before the Court on the defendants' motion to dismiss for lack of subject matter

jurisdiction. For the reasons set forth herein, the motion will be GRANTED.

## I

This case originates in Virginia's attempts to comply with the mandates of the CAA and various federal regulations implementing that statute. By final action effective January 4, 1995, the Environmental Protection Agency ("EPA"), which oversees and regulates state air pollution control programs, found that Virginia has failed to create an approvable operating permit program, as mandated by Title V of the CAA and subsequent implementing regulations. 42 U.S.C.A. § 7661–7661f; 40 C.F.R. Pt. 70 (1994). The EPA rejected Virginia's proposed program, in part, for failing to establish adequate statutory authority for citizens to challenge state air permit decisions in state court.[1] Virginia has properly appealed the EPA's decision directly to the United States Court of Appeals for the Fourth Circuit. *Virginia v. Browner*, 80 F.3d 869 (4th Cir.1996).

The EPA also determined that Virginia has failed to establish an approvable vehicle inspection and maintenance ("I/M") program for the Northern Virginia area, as provided for in both section 182(c)(3) of the CAA and federal regulations. 42 U.S.C.A. § 7511a(c)(3); 40 C.F.R. §§ 51.350–51.373 (1994).[2] The CAA requires Virginia to formulate an approvable I/M program as part of its State Implementation Plan ("SIP") revision and to submit a "control strategy SIP"

detailing its plans to achieve a 15% reduction in volatile organic compounds ("VOC") in the Northern Virginia area ("the 15% Plan requirement"). Virginia faces similar obligations for the Richmond and Hampton Roads metropolitan areas. However, in letters dated January 20, 1994, and February 7, 1995, the EPA found that Virginia had failed to submit a complete SIP for the I/M and 15% Plan requirements. These findings triggered the CAA's highway project conformity requirement. Under this provision, found in section 176(c)(1) of the CAA, federal agencies are prohibited from taking any action that might violate or undermine a state's SIP. 42 U.S.C.A. § 7506(c)(1). In particular, they are barred from approving, accepting, or funding any proposed transportation plan that fails to conform with the SIP. *Id.* Thus, Virginia stands to loose valuable federal highway funds and approval for proposed highway projects.

Virginia's apparent inability to comply with the CAA may also result in the imposition of federal sanctions. First, Virginia may be penalized with mandatory sanctions, both for failing to submit an approvable Title V program and for failing to submit a complete SIP pertained to the I/M programs for Richmond, Hampton Roads, and Northern Virginia. Section 179(a) of the CAA provides for such penalties 18 months after the EPA makes a finding of noncompliance, unless the state corrects the deficiency within that span of time. 42 U.S.C.A. § 7509(a).[3] Further-

---

1. Section 502(b)(6) of the Act requires the Commonwealth to hear suits brought by "any person who participated in the public comment process." 42 U.S.C.A. § 7661a(b)(6). Under Virginia law, however, such a participant can gain judicial review only by demonstrating that a final decision of the state Air Pollution Control Board inflicted upon them "an actual threatened or imminent injury [that constitutes] an invasion of an immediate, legally protected, pecuniary and substantial interest which is concrete and particularized." Va.Code Ann. § 10.1–1318(B) (Michie 1993).

2. The I/M requirements for ozone nonattainment areas (regions where ozone National Ambient Air Quality Standards have not been met) vary with the severity of the problem. A moderate ozone nonattainment area, such as Richmond, must adopt a "basic" I/M program. 42 U.S.C.A. § 7511a(b)(4). Serious ozone nonattainment ar-

eas, such as Northern Virginia, must adopt "enhanced" I/M programs. § 7511a(c)(3).

3. Mandatory sanctions come in two varieties. First, the EPA may prohibit the Secretary of Transportation from approving or funding certain non-safety related highway projects proposed by a state. § 179(b)(1), 42 U.S.C.A. § 7509(b)(1). Under the second sanction, termed the "offset sanction," the EPA may condition approval of new or modified pollution sources upon a substantially more demanding ratio of emissions reductions to increased emissions. § 179(b)(2), 42 U.S.C.A. § 7509(b)(2). One of these two sanctions must be imposed within 18 months after the EPA has found the state's SIP lacking, and another sanction must be imposed six months later. By regulation, the EPA imposes the offset sanction first for SIP violations. 40 C.F.R. § 52.31 (1994). However,

more, the EPA may impose discretionary sanctions at any time.[4] These sanctions, Virginia maintains, "may result in the loss of over a billion dollars in federal highway funds and the imposition of severe industrial development penalties." Compl. ¶ 4.[5]

Consequently, Virginia has filed suit for declaratory and injunctive relief, naming as defendants the United States of America, the EPA, the United States Department of Transportation, EPA Administrator Carol M. Browner, and Transportation Secretary Federico Peña (collectively, "the United States"). Virginia questions the constitutionality of four components of the CAA: (1) the Title V operating permit program requirement; (2) the I/M and VOC strategy SIP requirements; (3) the mandatory and discretionary sanction provisions; and (4) the transportation conformity requirement.

Virginia contends that Title V, the I/M and 15% Plan requirement, the transportation conformity provision, and the sanctions violate the Tenth Amendment to the United States Constitution. U.S. Const. amend. X. Virginia urges the Court to find that Congress is unconstitutionally coercing Virginia to enact and enforce these regulatory programs in derogation of state sovereignty. Second, Virginia contends that these same provisions constitute federal attempts to control the exercise of sovereign State powers, allegedly in violation of the Guarantee Clause. *Id.* art. IV, § 4. Third, it maintains that the highway funding provisions violate the Spending Clause. *Id.* art. I, § 8, cl. 1.

This Court has previously denied motions to intervene filed by the American Lung Association of Northern Virginia, the American Lung Association of Virginia, Audubon Naturalist Society, Citizens for Sensible Power, the Environmental Defense Fund, King George Environmental Association, Mountain Heritage Alliance, Virginia Citizen Action, and five individual Virginia citizens. The United States has now filed the instant motion to dismiss. Distilled to its essence, it is the United States' position that this lawsuit in part belongs in another court, and in part belongs in none. The United States first argues that this Court is powerless to hear Virginia's constitutional challenges to Title V, the I/M program, the 15% plan requirements, the conformity requirements and the related mandatory sanctions provisions, contending that these claims must be raised exclusively in the Court of Appeals. Second, it contends that Virginia's attack on the EPA's discretionary enforcement and sanction authority is not ripe for judicial review.

II

The standard of review for a 12(b)(1) motion is a function of that pleading's purpose. Where the motion constitutes a facial attack upon the complaint's allegations of subject matter jurisdiction, the Court must presume that all factual allegations in the complaint are true, *Puerto Rico ex. rel. Quiros v. Alfred L. Snapp & Sons*, 632 F.2d 365 (4th Cir.1980), *aff'd*, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), and make all reasonable inferences in the plaintiff's favor. *Johnson v. Mueller*, 415 F.2d 354 (4th Cir.1969); *MacKethan v. Peat, Marwick, Mitchell & Co.*, 439 F.Supp. 1090 (E.D.Va. 1977). In this case, however, the motion challenges the actual existence of the Court's subject matter jurisdiction. In such a situation, the Court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol*

---

the EPA has yet to select which sanction should apply first for failures to submit approvable Title V permit programs. The decision must be made pursuant to notice-and-comment rulemaking procedures, reviewable in the appropriate court of appeals.

**4.** The EPA's discretionary sanctions power is authorized by sections 110(m) and 502(d) and (i) of the Act. 42 U.S.C.A. §§ 7410(m), 7661a(d) and (i). Such sanctions are imposed through notice-and-comment rulemaking. *See* 59 Fed.Reg.

1476, 1481 (Jan. 11, 1994); *see also* 40 C.F.R. § 52.30 (1994) (criteria for limiting application of sanctions). They are appealable to the appropriate court of appeals under section 307(b)(1). 42 U.S.C.A. § 7607(b)(1).

**5.** If a state persists in failing to submit an acceptable Title V permitting program after these sanctions take effect, the EPA must promulgate and implement Clean Air Act programs in its stead. § 502(d)(3) and (i)(4); 42 U.S.C.A. § 7661a(d)(3) and (i)(4).

*Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir.1993) (citations omitted); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982); *Ocean Breeze Festival Park, Inc. v. Reich,* 853 F.Supp. 906, 911 (E.D.Va.1994). It is Virginia's burden to prove that jurisdiction in this Court is proper. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Adams,* 697 F.2d at 1219; *Fleming v. Workers' Comp. Comm'n,* 878 F.Supp. 852, 857 (E.D.Va.1995). Further, while the contents of Virginia's Complaint are relevant evidence on the jurisdictional issue, they lack conclusive force. 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1363, at 456 (1990); *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed.Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994). Finally, the Court must read Virginia's Complaint as a whole and afford it a liberal construction, but is not bound to draw argumentative inferences in Virginia's favor. *Flue–Cured Tobacco Coop. Stabilization Corp. v. United States EPA,* 857 F.Supp. 1137, 1140 (M.D.N.C.1994).

### III.

For its opening salvo, the United States relies upon section 307(b)(1) of the CAA, which provides:

> a petition for review of the Administrator's action in approving or promulgating any implementation plan ... *or any other final action of the Administrator* under [the CAA] (including any denial or disapproval by the Administrator under subchapter 1 of this chapter) which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit.

42 U.S.C.A. § 7607(b)(1) (emphasis added). This statute vests the courts of appeals with exclusive jurisdiction to review any and all EPA final actions taken under the CAA. *Harrison v. PPG Industr., Inc.,* 446 U.S. 578, 589, 100 S.Ct. 1889, 1896, 64 L.Ed.2d 525 (1980); *see Greater Detroit Res. Recovery Auth. v. United States EPA,* 916 F.2d 317, 321 (6th Cir.1990). In the United States' opinion, this statute also requires that all claims and challenges that *relate to* the judicial review of such "final action" must be brought exclusively in the Court of Appeals.

There can be no dispute that the EPA has engaged in final actions as to the bulk of the challenged provisions. *But see infra* Part IV. Virginia has directly appealed the Title V final action to the Court of Appeals. Similarly, the EPA took final action in finding that Virginia had failed to comply with the substantive I/M and 15% Plan requirements. Nevertheless, Virginia rejects the United States' position, arguing that it has not raised a *direct* challenge to any EPA action. Accordingly, Virginia maintains that the Court possesses subject matter jurisdiction through the federal question jurisdiction statute, 28 U.S.C.A. § 1331 (West 1993).

Virginia's argument was considered and repudiated in *Natural Resources Defense Council v. Reilly,* 788 F.Supp. 268 (E.D.Va. 1992), and this Court follows that ruling. There, the court held that under section 307(b)(1), a suit brought under the CAA citizen suit provision, 42 U.S.C.A. § 7604(a)(2), and seeking to require the EPA to promulgate onboard refueling vapor recovery standards, could be brought in the Court of Appeals for the District of Columbia alone. *Id.* at 274. The court reached this result although the plaintiff's challenge was perhaps not clearly "*a challenge* to a final action." *Id.* at 272 (emphasis in original). Said the court:

> The answer to the jurisdictional question lies not in determining which of the parties' characterizations makes better sense semantically, but in determining which better satisfies the policies underlying the CAA's jurisdictional scheme.

*Id.* at 273. The court found two primary concerns: (1) "the existence of an underlying record" and (2) "the concern for judicial economy." *Id.* In this case, both policies militate in favor of the United States.

### A

*Reilly* rested in large part upon the presence of a detailed record, and declined to address the hypothetical situation where no record existed. *Id.* at 272, n. 6; *id.* at 273. In Virginia's eyes, that issue is before this

Court today. Virginia places heavy emphasis upon the absence of a detailed record bolstering its claims, and contends that it needs to employ the discovery process available in the district courts to properly advance its constitutional claims.

It must first be noted, perhaps for Virginia's benefit as much as anyone's, that this lawsuit is a *facial* challenge to the CAA. The Court believed this much was settled during the early stages of the case, when Virginia, opposing the motions to intervene, underscored that it was simply challenging the CAA on its face and was making no attempt to contest the EPA's application:

> the Commonwealth's complaint challenges the facial constitutionality of the federal law. The complaint does not attempt to challenge EPA's application of the statute; that issue is the subject of the Commonwealth's pending appeal of EPA's disapproval of Virginia's Title V operating permits program.

Pls.'s Mem. in Oppo. to Mot. to Intervene, at 7 (emphasis added); *see also* Pls.'s Mem. in Oppo. to Mot. to Intervene of Am. Lung Ass'n, at 7.

Now, though, Virginia hedges, arguing that while "a portion of the Commonwealth's complaint *may be viewed as a facial attack*," Pls.'s Mem. In Opp. to Defs.' Mot. to Dis. at 18 (emphasis added), it is also bringing an "as applied" claim that requires the development of a factual record in this Court. *Id.* Of course, what appears to be a rather distressing about-face may be simply a breakdown in communication. As Virginia explained at the hearing on the instant motion, it is challenging the statute "as applied by Congress," a characterization that the Court continues to interpret as a facial challenge. If Virginia wished to raise any other claim, the correct procedure was a motion for leave to amend the Complaint, rather than verbal chicanery. In any event, insofar as Virginia persists in a new-found belief that it marshals an "as applied" claim, the answer is clear: Congress itself does not apply the CAA, having chosen to assign that task to the EPA. And as Virginia has conceded, it is beyond peradventure that section 307(b)(1) requires that any challenge to the EPA's application of the CAA be lodged in the Court of Appeals.

 That digression aside, the Court considers whether an evidentiary record is required to pass judgment upon the constitutionality of the CAA provisions at issue here. Clearly, the facial attack on Title V needs no further factfinding, for the record prepared before the EPA during its assessment of Virginia's program should sufficiently accommodate Virginia's challenge. Further, the Court is unmoved by Virginia's plea for a factual record to support its claim that the sanctions are unduly coercive. "In order to state a facial challenge to a statute or regulation, the plaintiff must assert that '*any* application of the regulation is unconstitutional." *Christopher Lake Dev. Co. v. St. Louis Cty.*, 35 F.3d 1269, 1275 (8th Cir.1994) (emphasis in original; quoting *Eide v. Sarasota Cty.*, 908 F.2d 716, 724, n. 14 (11th Cir.1990), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991)). That the statute might operate unconstitutionally in a particular set of circumstances will not suffice. *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). Virginia must challenge the language, rather than the application and enforcement of the statute. *Utah Women's Clinic, Inc. v. Leavitt*, 844 F.Supp. 1482, 1488 (D.Utah 1994). For such an attack, a record would be superfluous.

The same holds true if the Court indulged Virginia's attempt to conjure up "as applied" claims. Virginia contends that a record is required to demonstrate "the overwhelming impact the Act's sanctions would have on Virginia." Pls.'s Mem. In Opp. to Defs.' Mot. to Dis. at 19. But Virginia's Complaint describes that impact solely in terms of lost economic development, *see* Compl. ¶¶ 84–89, a consideration that "standing alone, is insufficient to establish a violation of the Tenth Amendment." *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 292, n. 33, 101 S.Ct. 2352, 2368, 69 L.Ed.2d 1 (1981). Instead, the Tenth Amendment inquiry is a textual one, assessing whether the CAA " 'commandeer[s] the legislative processes of the States by directly compelling them to enact and enforce a federal regulato-

ry program.'" *New York v. United States,* 505 U.S. 144, 160, 112 S.Ct. 2408, 2420, 120 L.Ed.2d 120 (1992) (quoting *Hodel,* 452 U.S. at 288, 101 S.Ct. at 2366; *see Federal Energy Reg. Comm'n v. Mississippi,* 456 U.S. 742, 769, 102 S.Ct. 2126, 2143, 72 L.Ed.2d 532 (1982); *United States v. Onslow Cty. Bd. of Educ.,* 728 F.2d 628, 640 (4th Cir.1984) ("The nature of federal action is the determinative factor in Tenth Amendment analysis"). Similarly, the focus of a Guarantee Clause analysis, assuming the justiciability of such a question, *see New York,* 505 U.S. at 184–85, 112 S.Ct. at 2432–33, is whether the language of the CAA "offers the States a legitimate choice rather than issuing an unavoidable command." *Id.* at 185, 112 S.Ct. at 2433.

It is a closer question whether factual evidence might place Virginia's spending power claim on firmer ground. Ultimately, however, the Court believes that a record would not aid Virginia's cause. The issue under the Spending Clause is whether the challenged highway funding conditions "bear some relationship to the purpose of the federal spending." *Id.* at 167, 112 S.Ct. at 2423 (citing *South Dakota v. Dole,* 483 U.S. 203, 207–08, and n. 3, 107 S.Ct. 2793, 2796, and n. 3, 97 L.Ed.2d 171 (1987)).[6] Arguably, a record might help Virginia establish that the highway funding conditions are "so coercive as to pass the point at which 'pressure turns into compulsion.'" *Dole,* 483 U.S. at 211, 107 S.Ct. at 2798 (quoting *Steward Mach. Co. v. Davis,* 301 U.S. 548, 590, 57 S.Ct. 883, 892, 81 L.Ed. 1279 (1937)). However, the Court has serious doubts whether the coercion inquiry is a viable tool of spending power jurisprudence. *See Nevada v. Skinner,* 884 F.2d 445, 448 (9th Cir.1989) ("the difficulty if not the impropriety of making judicial judgments regarding a state's financial capabilities renders the coercion theory highly suspect as method for resolving disputes between federal and state governments"), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990). And even if such proof is relevant, this Court is not the forum in which Virginia can lament its absence:

It is the respondents' view that since agency action predicated on neither informal adjudication nor informal rulemaking is apt to be based on a record too scant to permit informed judicial review, the district court is the preferable forum, since the tools of discovery are there available to augment the record, whereas in a court of appeals of time-consuming remand to EPA might be required.

This is an argument to be addressed to Congress, not to this Court.

*Harrison,* 446 U.S. at 592–93, 100 S.Ct. at 1897–98. Finally, any evidentiary need is outweighed by the concern for judicial economy, as demonstrated below. *See infra,* Part III(B).

In short, Virginia has failed to rebut the presumption that jurisdiction belongs in the Court of Appeals. *Reilly,* 788 F.Supp. at 273; *Indiana & Michigan Electr. Co. v. U.S. EPA,* 733 F.2d 489, 490 (7th Cir.1984) (presumption of exclusive appellate jurisdiction avoids needlessly adding layers of judicial review where no additional facts need be found). Consequently, the Court concludes that its factfinding powers are not required.

B

The second policy concern, "the concern for judicial economy; *to wit,* the risk of duplicative or piecemeal litigation, and the risk of contradictory decisions," *Reilly,* 788 F.Supp. at 268, also counsels in favor of dismissal. Should this Court undertake to resolve the constitutionality of Title V, it would be addressing a question also raised before the Court of Appeals. Such simultaneous review would unnecessarily sap judicial resources and risk an inconsistent application of the CAA. *Palumbo v. Waste Technologies Industr.,* 989 F.2d 156, 161–62 (4th Cir.1993). The success of Virginia's challenge to the EPA's authority under Title V would undermine, nay nullify, the agency's final action disapproving Virginia's program, an action currently being reviewed by the Court of

---

**6.** For this reason, Virginia's desire to show that air pollution will increase if federal highway dollars are withheld is a wild-goose chase. Scientific certainty is not required; it is enough that the

conditions be "reasonably calculated to advance the general welfare." *Dole,* 483 U.S. at 208, 107 S.Ct. at 2797.

Appeals. A ruling in Virginia's favor would mean that this Court was necessarily declaring that the EPA's application of the statute, a matter left for appellate review, was similarly unconstitutional.[7]

■■■ Beyond this risk of inconsistency, the Court also fears that entertaining the merits of Virginia's claim would needlessly drag two courts into this dispute. When a citizen suit challenge to EPA inaction "is embedded in a challenge to the validity of an [SIP]," jurisdiction lies in the circuit court reviewing the SIP for fear of spawning duplicative judicial proceedings. *Indiana & Michigan Electr. Co.*, 733 F.2d at 490; *see also Kamp v. Hernandez*, 752 F.2d 1444, 1454 (9th Cir.1985), *modified*, 778 F.2d 527 (9th Cir.1985). The same logic applies to suits that necessarily implicate EPA final actions, whether or not those suits are brought under the citizen suit provisions of the CAA. As the Fourth Circuit has noted, in the context of the Resource Conservation and Recovery Act:

> when Congress has chosen to provide the circuit courts with exclusive jurisdiction over appeals from decisions, the district courts are without jurisdiction over the legal issues *pertaining to* those decisions— whether or not those issues arise from the statute that authorized the agency action in the first place.

*Palumbo*, 989 F.2d at 161 (emphasis added). Thus, just as courts give an expansive reading to the term "final action," as that term is used in section 307(b)(1), in order to avoid "an impractical process of piecemeal review," *see City of Seabrook v. Costle*, 659 F.2d 1371, 1373 (5th Cir.1981); *see also Asbestec Constr. Servs., Inc. v. United States EPA*, 849 F.2d 765, 768 (2d Cir.1988), this Court interprets the statute to reach the class of claims that "necessarily implicate" an EPA final action. *Reilly*, 788 F.Supp. at 273.

Virginia has done itself no favors by raising constitutional challenges to these sanctions provisions in the Court of Appeals case.

Of course, here Virginia is objecting to the EPA's authority to sanction, rather than its decision to sanction, but in light of the section 307(b)(1), that makes for a slight distinction. Whether this Court decides that the EPA lacks the constitutional authority to sanction Virginia or whether the Court of Appeals decides that the mandatory sanctions clock was improperly triggered, the result is the same—the final action is upset. Thus, Virginia's facial challenges necessarily implicate EPA final actions and cannot be litigated here.

In conclusion, when a challenge to the EPA's authority to act is embedded in a challenge to the action itself, that claim can be heard by the Court of Appeals alone. Because a decision on the constitutionality of Title V clearly crosses that line, that portion of Virginia's claim will be dismissed. Likewise, Virginia's challenges to the I/M and 15% Plan requirements, and the related transportation conformity provisions, fall within the bailiwick of the Court of Appeals. This is true even though Virginia has not appealed these findings of noncompliance, for those claims are still inextricably tied to EPA final actions. Were this Court to decide that these substantive provisions failed to pass constitutional muster, it would undermine the validity of EPA findings of noncompliance premised upon those enactments. For this reason, the Court finds that Virginia is impermissibly attempting to secure judicial review of its constitutional claims on two fronts. It will be barred from availing itself of this Court's jurisdiction.

### IV

■■■ Finally, the United States contends that Virginia's attack on the EPA's discretionary enforcement and sanction authority, as it might relate to the Richmond and Northern Virginia nonattainment zones, is not ripe for judicial review because no action has yet been taken. The United States also urges the Court to find that Virginia's claims

---

7. Virginia argues unpersuasively that the remedies available from this Court are sufficiently different from those available in the Court of Appeals that that jurisdiction in this Court is a must. The Court sees little practical difference between a declaration that Virginia's position is legally sound, an injunction against EPA enforcement, and an appellate pronouncement judgment that the CAA is unconstitutional. The effect of all three is the same; the EPA cannot act.

regarding the Hampton Roads nonattainment area are not ripe, for similar reasons.

■ Article III of the Constitution mandates that federal courts only address issues which are ripe for adjudication. If a dispute does not fall within this "case or controversy" requirement and is therefore not ripe for judicial review, the court is without subject matter jurisdiction and must dismiss the case. *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 138, 95 S.Ct. 335, 356, 42 L.Ed.2d 320 (1974). The Court's scrutiny originates in *Abbott Lab. v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), where the Supreme Court held that in determining whether a case is ripe, a court must assess "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515. The Court must balance its own interest "in a more concrete setting against the hardship to the parties caused by delaying review." *Webb v. Department of Health & Human Servs.*, 696 F.2d 101, 106 (D.C.Cir.1982). Each element of Virginia's claim must present a case or controversy, whether phrased as a separate count or not.

■ The first test is "whether the factual setting of the case is sufficiently clear to be susceptible to adjudication." *Andrade v. Lauer*, 729 F.2d 1475, 1481 (D.C.Cir.1984). Here, Virginia's challenges to the EPA's enforcement power fall short of the mark, because the type of administrative or judicial enforcement proceedings permitted by section 113 of the CAA have yet to be initiated. Similarly, the EPA has yet to commence the challenged discretionary sanctions process, and cannot without conducting notice-and-comment rulemaking to determine whether a sanction is appropriate and, if so, what kind. While the Court is mindful that the purely legal issues presented by a facial challenge would ordinarily be held ripe, *see, e.g., Association of Am. R.R. v. Public Serv. Comm'n*, 745 F.Supp. 1175, 1186 (S.D.W.Va.1989), where there has been no final agency action, a case cannot be reviewed. *Mulberry Hills Development Corp. v. United States*, 772 F.Supp. 1553, 1558 (D.Md.1991).

Any judicial review of the EPA's enforcement and sanctions authority will be more exact if there is a particular final action at issue, rather than the academic product of as-yet untapped powers. Moreover, by declining to hear Virginia's challenges, the Court properly defers to the EPA's right to complete its administrative task without fear of far-reaching judicial interference. *See Abbott Labs.*, 387 U.S. at 148–49, 87 S.Ct. at 1515–16.

■ Virginia also fails to meet the second prong of the *Abbott* test, for it will undergo no undue hardship if a decision is delayed. "The mere possibility ... that sanctions authorized under a general regulatory scheme may be imposed when the regulatory agency is confronted by specific facts developed in some future agency proceeding is insufficient" to create a ripe case or controversy. *Martin Tractor Co. v. Federal Election Commission*, 627 F.2d 375, 379 (D.C.Cir.), *cert. denied*, 449 U.S. 954, 101 S.Ct. 360, 66 L.Ed.2d 218 (1980). Virginia correctly points out that a case is ripe when the plaintiff has a choice between expensive compliance and expensive sanctions. *See, e.g., New York*, 505 U.S. at 175, 112 S.Ct. at 2428. That, however, is not the dilemma Virginia currently faces. The discretionary sanctions Virginia challenges have yet to be assessed. Although Virginia must act now to avoid the *risk* of sanctions, that does not of itself make this constitutional challenge ripe. The sanctions themselves cannot be described as "certainly impending." *Pacific Gas & Electr. Co. v. State Energy Resources Conserv. & Dev. Comm'n*, 461 U.S. 190, 201, 103 S.Ct. 1713, 1721, 75 L.Ed.2d 752 (1983). Absent "an actual or imminent application" of the CAA, the constitutional issues are not properly placed in a "clean cut and concrete form." *Renne v. Geary*, 501 U.S. 312, 322, 111 S.Ct. 2331, 2339, 115 L.Ed.2d 288 (1991). Further, Virginia will be free to raise its constitutional claims in defense of any enforcement action that arises in the future.

■ Finally, Virginia's position concerning the Hampton Roads nonattainment zone is nothing short of ludicrous. The EPA has initiated a rulemaking procedure to determine this area's classification and possibly

reclassify it as a "serious" ozone nonattainment area like Northern Virginia. However, no final action has been taken, and Virginia will be afforded ample opportunity to participate in that process. Because the EPA's process is not yet complete, there is no case or controversy here.

### V

In refusing to hear Virginia's claims, the Court, of course, expresses no opinion about the merits of its position. Today's decision is but a simple judgment that there is no role for this Court to play as Virginia and the EPA wage their ongoing dispute. The controversy must be resolved elsewhere. Therefore, for the reasons set forth above, the defendants' motion will be GRANTED.

An appropriate Final Order shall issue.