**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

COMMONWEALTH OF VIRGINIA; GEORGE
ALLEN, Governor of the
Commonwealth of Virginia,
Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA;
ENVIRONMENTAL PROTECTION AGENCY;
DEPARTMENT OF TRANSPORTATION;

No. 95-2229

CAROL M. BROWNER, Administrator
of the United States Environmental
Protection Agency, in her official
capacity; FEDERICO F. PENA,
SECRETARY, DEPARTMENT OF
TRANSPORTATION, Secretary of
Transportation, in his official
capacity,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-95-21-3)

Argued: September 28, 1995

Decided: February 2, 1996

Before POWELL,* Associate Justice (Retired), United States Supreme Court, sitting by designation, and MURNAGHAN and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge Michael wrote the opinion, in which Judge Murnaghan joined.

_____

**COUNSEL**

**ARGUED:** Roger Lewis Chaffe, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellants. Jeffrey Paul Kehne, Environment & Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** James S. Gilmore, III, Attorney General of Virginia, John Paul Woodley, Jr., Deputy Attorney General, Mary J. Leugers, Assistant Attorney General, John R. Butcher, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia; John P. Schmitz, Andrew J. Pincus, Charles A. Rothfeld, Gregory S. Walden, Thomas Dilenge, Washington, D.C., for Appellants. Lois J. Schiffer, Assistant Attorney General, David J. Kaplan, Albert M. Ferlo, Jr., Environment & Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Jan M. Tierney, Michael W. Thrift, Office of the General Counsel, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Washington, D.C.; Cecil A. Rodrigues, Office of the Regional Counsel, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Philadelphia, Pennsylvania; Diane K. Mobley, Office of the Chief Counsel, Federal Highway Administration, UNITED STATES DEPARTMENT OF TRANSPORTATION, Washington, D.C., for Appellees.

_____

*Justice Powell heard oral argument but did not participate in the decision of this case. The decision is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

2

**OPINION**

MICHAEL, Circuit Judge:

The Commonwealth of Virginia brought suit in the Eastern District of Virginia to challenge the constitutionality of various provisions of the Clean Air Act (CAA), 42 U.S.C. § 7401 et seq. According to Virginia, Title I and Title V of the CAA violate the Constitution's Spending Clause (art. I, § 8, cl. 1), Guarantee Clause (art. IV, § 4) and Tenth Amendment. The district court dismissed the case without prejudice for lack of subject matter jurisdiction on the ground that CAA § 307(b)(1), 42 U.S.C. § 7607(b)(1), places exclusive jurisdiction with this court. Because Virginia could have brought its constitutional claims directly before this court through a petition for review of final action of the Administrator of the Environmental Protection Agency, we affirm.

I.

Virginia says, "This action arises out of two major ongoing disputes with EPA regarding the Commonwealth's compliance with the federal [CAA]." One dispute, according to the complaint, involves Virginia's "alleged failure to develop and submit to EPA an approvable" vehicle inspection and maintenance (I&M) program and a volatile organic compound (VOC) reduction plan for Northern Virginia and Richmond. The other dispute involves Virginia's "alleged failure to develop and submit to EPA an approvable Title V [stationary pollution source] operating permit program." Compl. ¶¶ 1-2. Before we get to jurisdiction -- the only issue before us today -- some discussion of the pollution targeted here and CAA mechanisms for reducing that pollution is helpful.

The chief mischief-maker here is ozone, the pollutant that most often causes a particular region's air to violate federal standards. Ozone is one of the primary components of smog. In sufficiently high concentrations, ozone causes chest pains, coughing, nausea, irritation of the throat and increased susceptibility to respiratory infection. Clean Air Act Standards: Hearing Before the Subcomm. on Health and the Environment of the House Comm. on Energy and Commerce ("Clean Air Act Standards Hearing"), 101st Cong., 1st Sess. 14-16

3

(1989) (statement of Don R. Clay, EPA acting administrator for air and radiation). Excessive ozone can also damage forests and food crops. Id. at 16-18.[1]

Ozone is formed when volatile organic compounds (VOCs) react with nitrogen oxides in the presence of sunlight and heat. See Joseph Nordman, What Is Chemistry? A Chemical View of Nature 306 (1974). "VOC is the collective name given to pollutants that [contain carbon and] are gases at room temperature." Dashefsky, supra at 259. Automobile exhaust is a VOC source. See Nordman, supra at 315 (table).[2] Although most nitrogen oxides are made naturally, automobile exhaust increases atmospheric nitrogen oxide levels. Nordman, supra at 314. Thus, automobile exhaust, as a source of both VOCs and nitrogen oxides, is a major cause of increased ozone levels. Clean Air Act Standards Hearing, supra at 30 (statement of Don Theiler, President, State and Territorial Air Pollution Program Administrators); Dashefsky, supra at 196. Because by 2010 the number of miles driven in the United States will increase by an estimated 60 percent, the nation faces a real potential for ever-increasing amounts of pollution from automobile exhaust. Clean Air Act Standards Hearing, supra at 2 (statement of Rep. Waxman) ("Gains we have made in the past may be lost in an expanding cloud of auto exhaust.").

The CAA authorizes the EPA Administrator to promulgate national ambient air quality standards (NAAQS). CAA #8E8E # 108 & 109, 42 U.S.C. §§ 7408 & 7409. An area that does not meet the minimum level of air quality mandated by the NAAQS is considered to be a "nonattainment area." CAA §§ 107(d) & 171(2), 42 U.S.C. §§ 7407(d) & 7501(2). With respect to the pollutant ozone, an area's degree of nonattainment may be classified as marginal, moderate, serious, severe or extreme. CAA § 181(a), 42 U.S.C. § 7511(a).

_____

[1] Although ozone in the lower atmosphere harms ambient (breathable) air quality, ozone in the stratosphere prevents cancers caused by overexposure to the sun's ultraviolet radiation. Ironically, destruction of stratospheric ozone tends to increase ambient ozone levels by permitting more ultraviolet radiation to reach the surface of the Earth. See H. Steven Dashefsky, Environmental Literacy 185-86 (1993).
[2] Other VOC sources include household cleaners, solvents, electrical equipment and certain plastics. Dashefsky, supra at 259.

By 1989 more than 90 of the nation's urban areas were in nonattainment of the NAAQS for ozone, raising a health concern for as many as 95 million Americans. Clean Air Act Standards Hearing, supra at 30 (statement of Don Theiler). As a result, Congress in 1990 extensively amended the CAA in an effort to cope with the increasingly severe problem of unhealthy ozone levels throughout the country. See Clean Air Act Amendments of 1990, Pub. L. No. 101-549, 104 Stat. 2399.

The CAA's complex statutory and regulatory scheme calls upon the states to shoulder a large portion of the difficult task of cleaning up the nation's air. The 1990 amendments extended deadlines (that had existed under earlier versions of the CAA) for states to reach full attainment with respect to ozone levels and set new deadlines for states to achieve lesser (but still nonattaining) reductions of ozone. CAA §§ 181-185B, 42 U.S.C. §§ 7511-7511f. The 1990 amendments also encourage states to design and implement an operating permit program intended to regulate stationary sources of air pollution, such as factories and power plants. CAA §§ 501-507, 42 U.S.C. §§ 7661-7661f.

A.

Under Title I of the CAA, if a state has an area within it that EPA has classified as being in moderate, serious or severe nonattainment with respect to ozone, the state must devise and implement a "state implementation plan" (SIP) that reduces VOC emissions within the area by 15 percent (a "15% Plan"). CAA §§ 182(b)(1)(A)(i), 182(c) & 182(d); 42 U.S.C. §§ 7511a(b)(1)(A)(i), 7511a(c) & 7511a(d). The SIP must include a program of vehicle inspection and maintenance that will reduce automobile exhaust's contribution to air pollution (an "I & M Program"). CAA § 182(b)(4), 42 U.S.C. § 7511a(b)(4).

Title I imposes sanctions on states that fail to comply with its provisions. States may, for example, be prevented from spending federal highway money in nonattainment areas. See CAA §§ 110(m), 176(c) & 179(b)(1); 42 U.S.C §§ 7410(m), 7506(c) & 7509(b)(1). This loss of highway money is automatic and mandatory if the state fails to implement an adequate SIP within 24 months of EPA's finding that a proposed SIP is deficient. CAA § 179(b)(1), 42 U.S.C.

5

§ 7509(b)(1). Even before this two-year period expires, EPA may (after first going through a notice-and-comment rulemaking proceeding) block the state from spending federal highway funds in nonattainment areas. CAA § 110(m), 42 U.S.C. § 7410(m). However, highway money may not be blocked -- under either the mandatory or the discretionary sanction provisions -- for projects that "likely will result in a significant reduction in, or avoidance of, accidents." CAA § 179(b)(1)(A), 42 U.S.C. § 7509(b)(1)(A). Nor may money be blocked if it is to be spent on transportation projects that would encourage conservation and that would tend to result in less pollution from automobiles, i.e., public transit programs, development of park-and-ride facilities, construction of high-occupancy vehicle lanes and the like. CAA § 179(b)(1)(B), 42 U.S.C. § 7509(b)(1)(B).

A state's failure to submit a valid SIP also causes the EPA to subject private industry to more stringent permitting requirements. CAA § 179(b)(2), 42 U.S.C. § 7509(b)(2). **3** This sanction is mandatory after 18 months and (as with the highway sanction) is discretionary at any time after EPA has found a proposed SIP to be inadequate. See CAA § 110(m), 42 U.S.C. § 7410(m).

Finally, if two years pass after a SIP is first found to be deficient or the state's submission of a proposed SIP to EPA is found to be administratively incomplete, EPA must impose a "federal implementation program" (FIP) on those areas of a state that are in nonattainment. CAA § 110(c), 42 U.S.C. § 7410(c)."The FIP provides an additional incentive for state compliance because it rescinds state authority to make the many sensitive technical and political choices that a pollution control regime demands." Natural Resources Defense Council v. Browner, 57 F.3d 1122, 1124 (D.C. Cir. 1995).

B.

Title V of the CAA requires states to administer permitting programs intended to regulate stationary sources of air pollution. CAA

---

**3** New polluting sources would not be allowed to be built and existing ones would not be allowed to be modified, unless 200 tons of pollution from existing sources were reduced for every 100 new tons of pollution allowed.

§§ 501-507, 42 U.S.C. §§ 7661-7761f. A state Title V Program must allow a full opportunity for judicial review of permitting decisions. See CAA § 502(b)(6), 42 U.S.C. § 7661a(b)(6). EPA cannot approve a state's Title V Program unless it provides

> an opportunity for judicial review in State court of the final permit action by the applicant, any person who participated in the public participation process . . . and any other person who could obtain judicial review of such [decisions] under State laws.

40 C.F.R. § 70.4(b)(3)(x). EPA has said that states must allow permitting decision challenges to be brought in state court by anyone who would have Article III standing in a federal case. 59 Fed. Reg. 62324, 62325 (Dec. 5, 1994).

Once EPA rejects a proposed Title V permitting program, the state has 18 months to correct any problems EPA has with the proposed plan. If the state does not correct the problems within 18 months, EPA must impose either the highway sanction or the permitting sanction described above. CAA § 502(d)(2), 42 U.S.C.§ 7661a(d)(2). Six months later, if the problems remain uncorrected, EPA must impose the remaining sanction. Id. In addition, EPA may impose these sanctions earlier, but (as in the Title I context) it first must go through a notice-and-comment rulemaking proceeding. Id. Finally, if EPA has not approved a state's Title V Program by November 15, 1995 (five years after enactment of the 1990 Amendments), EPA must promulgate and administer a federal Title V permitting program (a FIP) within the state. CAA § 502(d)(3), 42 U.S.C.§ 7661a(d)(3).

II.

Because the Northern Virginia area has been in "serious" nonattainment with respect to ozone levels, and because the Richmond area has been in "moderate" nonattainment, Virginia is subject to Title I. Virginia is also subject to Title V.

EPA took final action by letter on January 20, 1994, finding that Virginia's Title I (I & M and 15% Plan) submissions were incom-

plete, in part because Virginia only submitted draft regulations to EPA instead of final, permanent regulations. On December 5, 1994, EPA took final action disapproving on substantive grounds Virginia's Title V Program, see 59 Fed. Reg. 62324 (Dec. 5, 1994), in part because Virginia limited judicial review of permitting decisions to those litigants who could prove that they had a"pecuniary and substantial interest" in the outcome of the litigation. See Va. Code § 10.1-1318(B).

EPA's actions prompted Virginia to file on January 9, 1995, under 28 U.S.C. § 1331, a three-count complaint against EPA in the United States District Court for the Eastern District of Virginia, asking that certain CAA provisions be declared unconstitutional on their face. In Counts One and Two Virginia alleges that the CAA§ 182 (Title I) requirements for VOC reduction plans and I&M programs for ozone nonattainment areas and the CAA § 502(b)(6) (Title V) requirement for access to state courts violate the Tenth Amendment and the Guarantee Clause (U.S. Const. art. IV, § 4). According to Virginia, the federal government through these requirements has violated the Tenth Amendment by "commandeer[ing] the processes" of Virginia's legislature and courts and has violated the Constitution's guarantee of a republican form of government. In Count Three Virginia alleges that the sanction of loss of highway funds when a state fails to adopt specified air quality programs is not "rationally related" to the proper "objective of federal highway funding." This sanction, Virginia says, is "impermissible [ ] coercion" that violates implied limitations on Congressional authority under the Spending Clause (U.S. Const. art. I, § 8, cl. 1). The district court dismissed Virginia's complaint on June 12, 1995, for lack of subject matter jurisdiction, and Virginia's appeal from that dismissal is now before us.**4**

_____

**4** EPA found Virginia's Title I submission to be administratively complete in July 1995, one month after Virginia's complaint in the district court was dismissed and six months after it was filed. Discretionary sanctions, then, are no longer available to force compliance with Title I. Furthermore, the mandatory sanctions clock for noncompliance with Title I is stopped and reset to zero. See Browner, 57 F.3d at 1126. However, EPA's earlier finding that Virginia's Title I SIP was incomplete remains relevant, even though there has been a superseding finding of administrative completeness. The earlier finding of incompleteness started the two-

8

The same day, January 9, 1995, that Virginia filed its complaint in district court, the Commonwealth also filed a petition for review directly with this court, challenging as arbitrary and capricious EPA's substantive disapproval of Virginia's proposed Title V program and challenging the constitutionality of Title V and the CAA's sanctions provisions. Virginia v. Browner (Virginia II), No. 95-1052. In that petition Virginia argues that the CAA's sanctions provisions are unduly coercive, in violation of the Tenth Amendment and the Spending Clause. The Commonwealth also argues in Virginia II that if CAA § 502(b)(6) is construed to require states to alter their rules of judicial standing, the section would unconstitutionally infringe upon a core element of state sovereignty in violation of the Tenth Amendment. Virginia thus seeks to pursue many of the same constitutional claims on two fronts. Virginia II was argued on December 5, 1995, and is awaiting decision by this court.

III.

The question before us in this case is whether Virginia, by framing its complaint as a constitutional challenge to the CAA, may circumvent direct review in the circuit court under CAA§ 307(b)(1) and litigate in the district court under 28 U.S.C. § 1331. We hold that the district court is without jurisdiction in this case because review was available in the circuit court under § 307(b)(1) and that review is exclusive.

Our holding depends on the scope of the portion of CAA § 307(b)(1) that says, "A petition for review of any . . . final action of the [EPA] Administrator under this chapter . . . which is locally or regionally applicable may be filed only in the United States Court of

_____

year countdown toward EPA's promulgation of a FIP. See CAA § 110(c)(1), 42 U.S.C. § 7410(c)(1); Browner, 57 F.3d at 1126 & n.7. This countdown stops only when EPA approves Virginia's proposed SIP. See id. That approval has not been given. Accordingly, Virginia's challenge to Title I is not moot. Furthermore, the threat of sanctions under Title V remains because Virginia did not gain approval for its SIP before the November 15, 1995, deadline set by CAA § 502(d)(3), 42 U.S.C. § 7661a(d)(3), so the challenge to Title V is not moot either.

Appeals for the appropriate circuit." 42 U.S.C.§ 7607(b)(1) (emphasis added). Virginia argues first that it "does not seek a review of any final EPA action"; rather, it says, its "constitutional challenge is directed to the statute itself." Br. of Appellant at 7. Second, Virginia claims that in no event are constitutional challenges that would implicate final EPA action limited to review in the circuit courts. Virginia is wrong on both counts.

We turn first to whether Virginia targets final EPA action in its complaint filed in district court. A review of the complaint reveals that, although it seeks a ruling that certain parts of the CAA are unconstitutional, the practical objective of the complaint is to nullify final actions of EPA.

Virginia's complaint begins by acknowledging, "This action arises out of two major ongoing disputes with EPA regarding the Commonwealth's compliance with the federal [CAA]." Compl. ¶ 1. The complaint recognizes that one dispute came to a head when EPA took final action on January 20, 1994, and on February 5, 1994, finding that Virginia's Title I (I&M and 15% Plan) submissions were incomplete. Id. ¶¶ 66, 75. The complaint also concedes that the second dispute came to a head "[o]n December 5, 1994,[when] EPA took final action to disapprove the Commonwealth's Title V program . . . , with the main reason being the alleged defect in the judicial review provision." Id. ¶ 58. The complaint alleges that these final EPA actions will trigger various sanctions, including loss of federal highway money, more stringent permitting requirements for stationary sources of air pollution, and eventual federal takeover of air quality regulations. Id. ¶¶ 39-53 & 84-93. According to Virginia, the CAA sanctions scheme, triggered by the EPA final action here, violates the Tenth Amendment, the Guarantee Clause and the Spending Clause. Id. ¶¶ 96-113. Finally, in its prayer for relief Virginia seeks a declaration that the relevant provisions of the CAA are unconstitutional and requests a preliminary and permanent injunction preventing EPA from enforcing sanctions provisions against Virginia.

A reading of the complaint thus leaves no doubt that Virginia seeks to reverse final EPA action. Because jurisdiction under § 307(b)(1) turns on whether final agency action is the target of the challenger's claim, it is of no consequence that Virginia has armed itself with the

10

Constitution. See Natural Resources Defense Council v. Reilly, 788 F. Supp. 268, 274 (E.D. Va. 1992) ("The reversing of a final action . . . is the type of relief obtained in a court of appeals, not a district court.") There is simply no impediment to the adjudication of constitutional issues through petitions for direct review of final agency action in the circuit courts. See, e.g. , Thunder Basin Coal Co. v. Reich, 114 S. Ct. 771, 780 (1994).

Virginia ultimately concedes that constitutional challenges may "be brought by petition for review in the courts of appeals." Br. of Appellant at 14. But Virginia makes a second argument that "Congress did not intend § 307(b)(1) to encompass all claims that `necessarily implicate' a final agency action." Br. of Appellant at 9. In other words, according to Virginia, jurisdiction is not exclusively limited to the circuit courts, particularly when the Constitution is invoked. This issue, however, has been firmly decided against Virginia.

It is settled that "when Congress has chosen to provide the circuit courts with exclusive jurisdiction over appeals from agency [actions], the district courts are without jurisdiction over the legal issues pertaining to final [actions] -- whether or not those issues arise from the statutes that authorized the agency action in the first place." Palumbo v. Waste Technologies Indus., 989 F.2d 156, 161 (4th Cir. 1993). CAA § 307(b)(1) channels review of final EPA action exclusively to the courts of appeals, regardless of how the grounds for review are framed. See, e.g., Greater Detroit Resource Recovery Auth. v. U.S. E.P.A., 916 F.2d 317, 321-23 (6th Cir. 1990). See also Monongahela Power Co. v. Reilly, 980 F.2d 272, 275 (4th Cir. 1992) ("Because [§ 307(b)(1)] embodies a grant of exclusive jurisdiction, it appears that if the District of Columbia [Circuit] has jurisdiction over the present action, the district court does not.") (quoting Environmental Defense Fund v. Thomas, 870 F.2d 892, 896-97 (2d Cir.), cert. denied, 493 U.S. 991 (1989)).

Virginia makes several points in contending that § 307(b)(1) does not, or at least should not be allowed to, restrict final action review to the circuit courts.

First, Virginia suggests that the exclusivity of appeals court jurisdiction under § 307(b)(1) is undermined by the CAA's "citizen suit"

11

provision, § 304(a)(2), 42 U.S.C. § 7604(a)(2), which gives the district courts jurisdiction over claims that the EPA Administrator has failed to perform a nondiscretionary act or duty. Although Virginia could not file under § 304(a)(2) here, it argues that § 304(a)(2)'s presence means that Congress did not intend that § 307(b)(1) be given an "expansive reach." Br. of Appellant at 10. Virginia's idea has been rejected. Courts have held that if § 307(b)(1) review becomes available in the circuit court, the district court loses jurisdiction under § 304(a)(2). In Indiana & Mich. Elec. Co. v. EPA, 733 F.2d 489 (7th Cir. 1984), for example, the Seventh Circuit found that it alone had jurisdiction to adjudicate challenges to an EPA decision approving a SIP revision. The court of appeals' exclusive jurisdiction under § 307(b)(1) displaced the district court's citizen suit jurisdiction over a related claim. Id. at 490-91. City of Seabrook v. Costle, 659 F.2d 1371 (5th Cir. 1981), reached the same result. There, the Fifth Circuit found that even if the district court's jurisdiction under § 304(a)(2) could have been invoked before EPA took final action, once the "Administrator had issued his `final rule' . . . plaintiffs could seek review, as they did, only in the court of appeals." 659 F.2d at 1373. Accord Natural Resources Defense Council v. Reilly, 788 F. Supp. at 273-74.

Second, Virginia cites CAA § 304(e) as further evidence that Congress intended for district courts to retain concurrent jurisdiction over claims within the scope of § 307(b)(1). Section 304(e) provides in part:

> Nothing in this section [i.e.,§ 304] shall restrict any right which any person . . . may have under any statute or common law to seek enforcement . . . or to seek any other relief . . . .

42 U.S.C. § 7604(e) (emphasis added). This section only means that the citizen suit provision does not preempt any other available remedies. It has no bearing on whether Congress intended for appeals court review under § 307(b)(1), where available, to be exclusive. Moreover, § 307(e), which specifically addresses the exclusivity of § 307 review, states:

> Nothing in [the CAA] shall be construed to authorize judicial review of regulations or orders of the Administrator

12

under this chapter, except as provided in <u>this</u> section [<u>i.e.,</u> § 307].

See 42 U.S.C. § 7607(e) (emphasis added). <u>See also Oljato Chapter of the Navajo Tribe v. Train</u>, 515 F.2d 654, 660-61 & n.7 (D.C. Cir. 1975) (§ 307 takes precedence over other CAA jurisdictional provisions); <u>Center for Auto Safety v. EPA</u>, 558 F. Supp. 103, 104-05 (D.D.C. 1983) (same).

Third, Virginia argues that we should ignore the plain command of § 307(b)(1) because Virginia's constitutional claims cannot receive "meaningful judicial review," <u>see McNary v. Haitian Refugee Ctr., Inc.</u>, 498 U.S. 479, 496 (1991), unless it can develop a factual record in the district court. This argument has no merit. A count-by-count review of Virginia's facial constitutional claims establishes that none requires the type of factual development that Virginia advocates. In any event, this argument overlooks the fact that circuit courts are empowered to remand direct review cases to the agency for any necessary factual development. <u>See</u> CAA § 307(c), 42 U.S.C. § 7607(c).

Count One alleges that Congress, in enacting the Title V program, which requires broad access to state courts, and § 182, which imposes requirements for VOC reduction plans and I&M programs for ozone nonattainment areas, has "commandeered the processes" of Virginia's legislature and courts, in violation of the Tenth Amendment. Compl. ¶ 101. This claim appears to call for a purely textual analysis without the need for a record.

Count Two alleges that the CAA sanctions provisions at issue here violate the Guarantee Clause "because they are unlawful coercive and punitive measures used to force States like the Commonwealth to comply with these unconstitutional provisions." <u>Id.</u> ¶ 106. As the district court noted, any justiciable claim under Count Two will focus on "whether the language of the CAA `offers the States a legitimate choice rather than . . . an unavoidable command'" to enact and enforce the CAA's regulatory program. J.A. at 73 (quoting <u>New York v. United States</u>, 112 S. Ct. 2408, 2433 (1992)). Again, we believe that this claim can be determined without administrative fact-finding.

13

In Count Three Virginia claims that the CAA's highway funding sanctions violate federalism-based limits on Congress's spending power. See U.S. Const., art. I § 8, cl. 1 (Spending Clause). To establish this count, Virginia says it needs to "assemble a record" to show, among other things, the impact of the sanctions on Virginia's highway budget and construction program and "the macroeconomic effect sanctions have throughout . . . Virginia." Br. of Appellant at 22. Analysis of state economies and state budgets and operations has not been thought necessary to the resolution of Spending Clause claims in the past. See South Dakota v. Dole, 483 U.S. 203, 210-11 (1987). However, if we were to find this information relevant, on direct review we could remand to EPA to allow the information to be placed into the administrative record.[5] Indeed, this option applies to all constitutional claims raised in a petition for review, because the CAA permits us to remand to EPA for the development of whatever record we need to decide the issues before us on direct review. CAA§ 307(c), 42 U.S.C. § 7607(c). See also FCC v. ITT World Communications, Inc., 466 U.S. 463, 469 (1984); Harrison, 446 U.S. at 593-54.

Fourth, Virginia argues that channeling of constitutional disputes into the courts of appeals under § 307(b)(1) puts states in a "jurisdictional straitjacket" that can only be loosened by allowing concurrent jurisdiction in the district courts. Br. of Appellant at 15. Virginia argues that our construction of § 307(b)(1) forces a state to provoke hostile agency action (through EPA disapproval of state plans) in order for the state to bring a constitutional challenge. A state should not be required, according to Virginia, to elicit adverse EPA final action, thereby incurring risks such as highway funding restrictions, emission offset sanctions, promulgation of a FIP and discretionary sanctions in order to test its claims that these measures are unconstitutional. The dilemma that Virginia describes, however, is not presented in this case. Virginia filed suit after EPA took actions that were subject to challenge under § 307(b)(1). We, therefore, have no occasion to consider whether, in the absence of those final actions, Virginia could have obtained review under the district court's general federal

_____

[5] Although EPA cannot decide the constitutional questions, there is nothing to prevent it from receiving evidence that would be relevant to constitutional review in the courts of appeals. See Thunder Basin, 114 S. Ct. at 780.

14

question jurisdiction. We hold only that Virginia, in the circumstances presented, could have raised its constitutional challenges under § 307(b)(1) and that it was therefore confined to that avenue of review.

Finally, we disagree with Virginia's argument that the policy reasons supporting direct review do not apply to a constitutional challenge. Because Congress wanted prompt and conclusive review in air quality controversies, it channeled (to the courts of appeals) all challenges, regardless of their basis, of EPA rules and final actions. See Palumbo, 989 F.2d at 162 ("exclusive jurisdiction in the court of appeals avoids duplicative review and the attendant delay and expense involved") (quoting General Elec. Uranium Mgmt. Corp. v. U.S. Dep't of Energy, 764 F.2d 896, 903 (D.C. Cir. 1985)).

At bottom, Virginia argues that because it can frame a constitutional claim it should be allowed to proceed on two fronts at the same time by pursuing a complaint in district court and a separate petition for review in this court. But allowing Virginia to pursue such a strategy would undercut a major "basis for the CAA's jurisdictional scheme[:] the concern for judicial economy; to wit, the risk of duplicative or piecemeal litigation, and the risk of contradictory decisions." Natural Resources Defense Council v. Reilly, 788 F. Supp. at 273. We repeat, Congress wanted speedy review of EPA rules and final actions in a single court. See Adamo Wrecking Co. v. United States, 434 U.S. 275, 284 (1978). Thus, § 307(b)(1) displaces district court jurisdiction under 28 U.S.C. § 1331 as to claims, including constitutional claims, that can be taken directly to a court of appeals.

Accordingly, we hold to the established meaning of § 307(b)(1) and affirm the district court's dismissal of Virginia's complaint for lack of jurisdiction.

AFFIRMED

15