Filed:  December 17, 1998

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 98-1013

West Virginia Chamber of Commerce, et al,

Petitioners,

versus

Carol M. Browner, etc., et al,

Respondents.

O R D E R

The court amends its opinion filed December 1, 1998, as follows:

On page 8, footnote 6, line 3 -- the parenthetical is corrected to begin "(Respondent's Mot. to Dismiss Pet. for Review . . . .").

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WEST VIRGINIA CHAMBER OF COMMERCE;
WEST VIRGINIA MANUFACTURERS
ASSOCIATION; VIRGINIA CHAMBER OF
COMMERCE,
Petitioners,

BUSINESS COUNCIL OF ALABAMA,
Intervenor,

v.

CAROL M. BROWNER, in her official

No. 98-1013

capacity as Administrator of the United
States Environmental Protection
Agency; THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,
Respondents.

WEST VIRGINIA COAL ASSOCIATION;
WEST VIRGINIA MINING AND
RECLAMATION ASSOCIATION; STATE OF
WEST VIRGINIA,
Amici Curiae.

On Petition for Review of an Order
of the Environmental Protection Agency.

Argued: September 23, 1998

Decided: December 1, 1998

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
BULLOCK, Chief United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Transferred to the District of Columbia Court of Appeals by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Earle Duncan Getchell, Jr., MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Washington, D.C., for Petitioners. Robert Geoffrey Dreher, ENVIRONMENTAL PROTECTION AGENCY, Washington, D.C., for Respondents. **ON BRIEF:** Michael H. Levin, James L. Sanderlin, Neal J. Cabral, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Washington, D.C., for Petitioners. Lois J. Schiffer, Assistant Attorney General, Environment & Natural Resources Division, Karen L. Egbert, Environmental Defense Section, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Jan Tierney, Nancy Ketcham-Colwill, Office of General Counsel, ENVIRONMENTAL PROTECTION AGENCY, Washington, D.C., for Respondents. Earle Duncan Getchell, Jr., Michael H. Levin, James L. Sanderlin, Neal J. Cabral, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Washington, D.C., for Intervenor. Marcus A. Spatafore, David M. Flannery, JACKSON & KELLY, Charleston, West Virginia; Michael H. Levin, James L. Sanderson, Neal J. Cabral, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Washington, D.C., for Amici Curiae Coal Association and Reclamation Association. Thomas H. Zerbe, Assistant Chief, Office of Legal Services, DIVISION OF ENVIRONMENTAL PROTECTION, Charleston, West Virginia, for Amicus Curiae State of West Virginia.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This case began in a unique procedural posture. Petitioners West Virginia Chamber of Commerce, West Virginia Manufacturers Association and Virginia Chamber of Commerce[1] filed a petition for review of a certification made in a proposed rule by the Environmental Protection Agency (EPA) that the EPA was exempt from the requirements of the Regulatory Flexibility Act with respect to the rulemaking process for the proposed rule. The Environmental Protection Agency certified that the proposed rule, if promulgated, would not have a "significant economic impact upon a substantial number of small entities." Respondents, Carol M. Browner and the Environmental Protection Agency (collectively "EPA"), challenged the petition on several grounds. The EPA maintained that this Court lacked jurisdiction over Petitioners' complaint because (1) Petitioners' complaint was not ripe for review since no final agency action was involved, (2) Petitioners had not exhausted their administrative remedies since they could make comments on the certification during the notice and comment period, and (3) the statute under which the EPA promulgated the proposed rule does not provide for judicial review of this type of agency action. The EPA also argued, <u>inter alia</u>, that this Court is the improper venue for a challenge to EPA action under the Clean Air Act; that instead the Court of Appeals for the D.C. Circuit is the appropriate venue. The EPA filed a Motion to Dismiss for Lack of Jurisdiction; the Court deferred ruling on that Motion until after oral argument. In the interim, the EPA finalized the rule at issue, resolving many of the most troublesome questions facing us. The Court now holds that proper venue for this claim lies in the Court of Appeals for the D.C. Circuit and finds that a transfer to that court is in the interests of justice and in accord with sound principles of judicial administration.

_____

[1] The Business Council of Alabama was given leave to intervene by Order dated March 5, 1998. The State of West Virginia and the West Virginia Coal Association with the West Virginia Mining and Reclamation Association filed briefs as amici curiae in support of Petitioners.

I. <u>FACTUAL BACKGROUND</u>

The Clean Air Act, 42 U.S.C. §§ 7401-7671q (1994), establishes a comprehensive program for controlling and improving the nation's air quality through both state and federal regulation. Under sections 108 and 109 of the Clean Air Act, 42 U.S.C. §§ 7408, 7409, the EPA is charged with identifying air pollutants that endanger the public health and welfare, and with formulating National Ambient Air Quality Standards ("NAAQS") that specify the maximum permissible concentrations of those pollutants in the ambient air. One of the pollutants for which the EPA has promulgated NAAQS is ozone. 40 C.F.R. Pt. 50 (1997).

Under the Clean Air Act, states are given the primary responsibility for ensuring that the ambient air meets the NAAQS, subject to EPA approval and potential displacement. <u>See</u> 42 U.S.C. §§ 7404(a), § 7401(a)(3), 7410(c)(1), (m). After the EPA promulgates or revises a NAAQS, each state must draft state implementation plans ("SIPs") that provide for the implementation, maintenance, and enforcement of the NAAQS within the state.

The Clean Air Act specifies the various general elements that all SIPs must contain. 42 U.S.C. § 7410(a)(2). Each SIP must include enforceable emission limitations and other control measures as necessary to meet the requirements of the Clean Air Act, 42 U.S.C. § 7410(a)(2)(A), as well as adequate provisions prohibiting any source or other type of emissions activity within the state from emitting any air pollutant in amounts which will "contribute significantly to non-attainment in, or interfere with maintenance by, any other State with respect to any such national primary or secondary ambient air quality standard." 42 U.S.C. § 7410(a)(2)(D)(I)(I).

If the EPA determines that a SIP complies with the Clean Air Act, the EPA must approve it and the state regulations become enforceable as federal law. 42 U.S.C. §§ 7410(a), (k). If the EPA determines that a SIP is inadequate to attain the NAAQS or otherwise does not comply with the Clean Air Act, or if the EPA designates an area of a state as "non-attainment" for ozone, or reclassifies the area, it must require the state to submit a revised SIP to correct the inadequacy (a "call" on the state to revise its SIP, or a "SIP Call"). <u>Id.</u> If the state does not

4

timely submit an approvable revised SIP or adequately implement an approved revision, the EPA must impose specified sanctions within fixed deadlines, and must eventually promulgate its own Federal Implementation Plan ("FIP") imposing sufficient reduction mandates on sources within the state. 42 U.S.C. §§ 7410(c), 7509(a)-(b).

Many states were unable to complete their SIPs for ozone within the original schedules prescribed in the Clean Air Act because they lacked important information on interstate ozone transport. See 62 Fed. Reg. 1420, 1421 (Jan. 10, 1997). To provide that information, the EPA and the states began a two-year process to assess interstate ozone transport. This process began in 1995 with the formation of a workgroup, the Ozone Transport Assessment Group ("OTAG"), which included representatives from the EPA, 37 states east of the Rocky Mountains, industry, and environmental groups. See 61 Fed. Reg. 2428, 2431 (Jan. 26, 1996).

In July 1997, OTAG completed its work and forwarded recommendations to the EPA concerning the levels of emissions reductions needed to eliminate transported ozone as an obstacle to attainment in downwind states. Based on these recommendations and other information, the EPA issued a Notice of Proposed Rulemaking ("NPRM") on November 7, 1997. 62 Fed. Reg. 60,318 (Nov. 7, 1997).

In the NPRM, the EPA proposed to declare inadequate 23 SIPs, and require their revision within a year (the "Ozone Transport SIP Call"). Specifically, the EPA proposed to find that the transport of ozone from 22 states and the District of Columbia significantly contributes to non-attainment of the ozone NAAQS or interferes with maintenance of the NAAQS in downwind states. 62 Fed. Reg. at 60,310.[2] This finding by the EPA would require those states to revise their SIPs to meet the requirements of section 42 U.S.C.§ 7410(a)(2)(D) to prohibit ozone precursor emissions from sources or activities in those states from "contribut[ing] significantly to non-attainment in, or

_____

**2** The states covered by EPA's findings are Alabama, Connecticut, Delaware, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Virginia, West Virginia, and Wisconsin. Id.

5

interfer[ing] with maintenance by," a downwind state of the ozone NAAQS. 62 Fed. Reg. at 60,320. In particular, the EPA proposed to assign to each state emissions budgets for NOx that each of the identified states must meet through adoption of SIP measures. For example, the original NOx budget for West Virginia required a substantial 44% reduction in overall NOx emissions, and the original NOx budget for Alabama required a 36% reduction in overall NOx emissions. The EPA's proposed rule would impose different NOx reductions requirements on each state, and on emitting sources within each state. As EPA explained in the rulemaking proposal, "this requirement permits each State to choose for itself what measures to adopt to meet the necessary emission budget." 62 Fed. Reg. at 60,320. At the same time, EPA encouraged the states to consider electric utility and large boiler controls as the most cost-effective strategy. Id.

The Regulatory Flexibility Act ("RFA"), Pub. L. No. 96-354, 94 Stat. 1165 (1980), as amended by the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, 110 Stat. 864 (1996) (codified as amended at 5 U.S.C. § 601-612 (Supp. II 1996)), originally enacted in 1980, requires an agency to identify the potential economic impact of proposed and final rules on small entities that will be subject to the rule's requirements.**3** Under section 603, whenever an agency is required by the Administrative Procedure Act (APA) or any other law to publish a notice of proposed rulemaking, it must prepare and make available for public comment an initial regulatory flexibility analysis. 5 U.S.C. § 603(a). Section 604 also provides that when an agency promulgates a final rule, after being required either by the APA or another law to publish a general notice of proposed rulemaking, it must prepare a final regulatory flexibility analysis. 5 U.S.C. § 604. However, the requirements for initial and final RFA analyses "shall not apply to any proposed or final rule if the head of the agency certifies that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities." 5 U.S.C. § 605(b).

_____

**3** "Small entities" include small businesses, as well as "small governmental jurisdictions," which include "cities, counties, towns, townships, villages, school districts, or special districts, with a population of less than fifty thousand. . . ." 5 U.S.C. § 601(5). Under this definition, states are not considered "small entities" within the meaning of the RFA.

6

The RFA was amended by the Small Business Regulatory Enforcement Fairness Act of 1996 ("SBREFA"), Pub. L. 104-121, Title II, 201-253, 110 Stat. 847, 857-74 (5 U.S.C. § 601-612 (Supp. II 1996)). Legislative history of SBREFA indicates that the 104th Congress was concerned that agencies had been neglecting their duties under the RFA through casual agency certifications of non-applicability or insufficient analyses. Towards that end, SBREFA amended RFA's judicial review provision to allow for judicial review of compliance with certain sections of the RFA. See 142 Cong. Rec. S3242, S3245 (daily ed. Mar. 29, 1996) (judicial review provision was added in response to small business complaints that "agencies have given lip service at best to RFA"); 5 U.S.C. § 611(a). In addition to the judicial review provision, Congress also required a new statement of factual basis supporting any certification that the RFA was nonapplicable under 5 U.S.C. § 605(b).[4] Finally, Congress added several small entity "outreach" requirements specifically applicable only to the EPA and the Occupational Safety and Health Administration. These requirements apply before the EPA proposes a rule, and include giving detailed notice to the Small Business Administration, convening a small business Review Panel, and completing that Review Panel's report. See 5 U.S.C. § 609(b) (1996).

In the Ozone Transport SIP Call at issue, the EPA certified, under RFA section 605(b), that the underlying rule, if promulgated, "will not have a significant economic impact on a substantial number of small entities" because it "simply requires States to develop, adopt, and submit SIP revisions, and does not directly regulate any entities" (the "RFA certification"). 62 Fed. Reg. at 60,375. The EPA further explained that because affected States will have discretion to choose which sources to regulate and how much emission reductions each selected source must achieve, the EPA "cannot now predict the effect of this rule on small entities." Id. Finally, the EPA noted that if States adopt the control measures that the EPA suggested and that were the basis of each State's proposed budget, "there will be little, if any, effect on small businesses." Id.

_____

**4** See 142 Cong. Rec. S3242, S3245 (daily ed. Mar. 29, 1996) ("The bill requires agencies to publish their factual, policy and legal reasons when making a certification").

7

On January 6, 1998, Petitioners filed this petition for review, challenging the EPA's RFA certification in the notice of proposed rulemaking for the Ozone Transport SIP Call.**5**

The EPA has since published a notice of additional items related to the NPRM, see 63 Fed. Reg. 17349 (Apr. 9, 1998), and a supplemental notice of proposed rulemaking, 63 Fed. Reg. 25902 (May 11, 1998). Just recently, on September 24, 1998, the day after oral argument, the EPA finalized and signed the Ozone Transport SIP Call, see <http://www.epa.gov/ttn/oarpg/tlpfpr.html> [hereinafter Sept. 24, 1998 action], although for some reason the EPA has not yet published that final rule in the Federal Register. In each of these follow-ups to the Ozone Transport SIP Call NPRM, the EPA reiterated its RFA Certification from the Ozone Transport SIP Call NPRM, and therefore continued to claim an exemption from the dictates of the RFA under 5 U.S.C. § 605(b).

## II. DISCUSSION

The EPA has raised numerous challenges to the petition for review. Since we find that venue is inappropriate in this Court, we do not reach the majority of these challenges.**6** One issue which the EPA raised by motion, which we would normally need to address as a prerequisite to passing on the other issues, is the question of our subject matter jurisdiction. We need not address our subject matter jurisdiction, however. If we were to find that we lacked subject matter jurisdiction, we could transfer the case to a court that did have subject matter jurisdiction (and venue) in the interests of justice pursuant to 28 U.S.C. § 1631. On the other hand, if we were to find that we did have subject matter jurisdiction, but venue was improper, then we could still transfer the case to a court where venue was proper upon

_____

**5** According to Respondents, at public hearings on the proposed rule Petitioners presented oral and written testimony on aspects of the proosed rule, including the EPA's RFA certification of the rule.

**6** Although the EPA did not make a formal motion of improper venue under Fed. R. Civ. P. 12(b)(3), the EPA did raise the venue issue in its Motion to Dismiss. (Respondent's Mot. to Dismiss Pet. for Review for Lack of Jurisdiction at 8 n.5.) We hereby construe this as a motion to dismiss or transfer for lack of venue.

a finding that such transfer was in the interests of justice and in accord with sound principles of judicial administration. See, e.g., Clark & Reid, 804 F.2d 3, 7 (1st Cir. 1986); Dornbusch v. C.I.R., 860 F.2d 611, 614-15 (5th Cir. 1988); Alexander v. C.I.R., 825 F.2d 499, 501-02 (D.C. Cir. 1987); Panhandle Eastern Pipeline Co. v. Federal Power Com., 337 F.2d 249, 252 (10th Cir. 1964); Pearce v. Director, Office of Workers' Compensation Programs, 603 F.2d 763, 771 n. 3 (9th Cir. 1979) (listing cases in eight circuits holding that courts of appeals have inherent power to transfer cases).

It is worth addressing one subset of issues on subject matter jurisdiction raised by the EPA. The EPA argued at great length before this Court that we lacked subject matter jurisdiction over the petition for review because there had not yet been a final agency action, the controversy was not ripe for review, and Petitioners had not exhausted their administrative remedies. While we might have been inclined to address the merits of each of these arguments so as to avoid sending an empty package to the D.C. Circuit, we need not do so now. We find that all of these arguments have become mooted by the EPA's issuance of the finalized version of the Ozone Transit SIP Call on September 24, 1998. There has now been final agency action; the case is now ripe for review; and the administrative remedies that the EPA claimed required exhausting have now been exhausted. **7**

Therefore, we will begin and end the opinion with an examination of venue. Because the EPA has finalized a rule under the Clean Air Act, the jurisdictional provision of the Clean Air Act, 42 U.S.C. § 7607(b)(1), governs this case. See 5 U.S.C. § 611(2); Commonwealth of Va. v. United States, 74 F.3d 517, 522, 523 (4th Cir. 1996) (collateral attacks on the validity of final EPA action under the Clean Air Act governed by section 307(b); State of Missouri v. United States, 109 F.3d 440, 441-42 (8th Cir. 1997), reh'g and suggestion for reh'g en banc denied June 12, 1997 (similar holding). Cf. City of Alexandria v. Helms, 728 F.2d 643, 646 (4th Cir. 1984) (when an agency's determination under a generally applicable statute is made incident to action authorized under the agency's organic statute,

_____

**7** We express no opinion on whether, in the absence of the issuance of a finalized rule, the EPA's arguments of ripeness, lack of finality, and exhaustion of administrative remedies would have been meritorious.

9

review of the determination is subject to the judicial review provisions of the organic statute); City of Rochester v. Bond, 603 F.2d 927, 936 (D.C. Cir. 1979) (similar holding). 42 U.S.C.§ 7607(b)(1) states:

>  (1) A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, [certain other standards, determinations, controls, prohibitions, rules], or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating [certain implementation plans or orders]**8**, or [of the EPA's] action under [certain sections of the Clean Air Act or regulations thereunder], or any other final action of the Administrator under this chapter... which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination.

According to the dictates of this statute, we must decide whether the Ozone Transport SIP Call is "nationally applicable" or "locally or regionally applicable"; or if the Ozone Transport SIP Call is based on a determination of nationwide scope or effect and the EPA properly published such a determination.**9**

_____

**8** This omission includes reference to section 110 of the Clean Air Act. Neither party has suggested that EPA's action is one "approving or promulgating" an implementation plan under section 110 of the Clean Air Act. We find that the Ozone Transport SIP Call is not such an action.

**9** Because we do not decide whether or not we have subject matter jurisdiction, we do not reach the question whether 42 U.S.C. § 7607(b)(1)'s allocation between the "appropriate circuit" courts and the

A. <u>Nationally Applicable versus Locally</u>
      <u>or Regionally Applicable</u>

The EPA argues that the Ozone Transport SIP Call is nationally applicable because (1) it sets forth EPA's national approach for dealing with the problem of the interstate transport of ozone; (2) it affects 22 states and the District of Columbia, spanning eight different federal judicial circuits, (3) the rule is based on a common core of factual information and analyses concerning the long-range transport of ozone and ozone precursors over numerous states, (4) the EPA expects to establish uniform approvability criteria to be applied to all the states subject to the Ozone Transport SIP Call, and (5) through the rule, the EPA interprets section 110 of the Clean Air Act in a way that could affect future actions regulating the transport of pollutants. In fact, the EPA is so sure that this rule is nationally applicable that it has declared the Ozone Transport SIP Call to be of "nationwide scope and effect." <u>See</u> 63 Fed. Reg. at 25969; Sept. 24, 1998 action, at 639-41.

Petitioners argue that the Ozone Transport SIP Call is regional or local because it is nothing more than numerous separate EPA actions on state-specific implementation plans, each based upon local factors and conditions. Petitioners argue that the EPA cannot turn several separate "avowedly local" actions, <u>see Madison Gas & Electric Co. v. E.P.A.</u>, 4 F.3d 529, 530 (7th Cir. 1993), into a national one merely by bundling them together. Petitioners further point out that throughout the Ozone Transport SIP Call NPRM, the EPA itself noted the regional nature of the proposed rule. <u>See</u>, <u>e.g.</u>, 62 Fed. Reg. at 60320, cols. 1, 3; <u>id.</u> at 60322, col. 1; <u>id.</u> at 60323, col. 1. Petitioners also take

_____

D.C. Circuit is a jurisdictional or venue provision. <u>Compare Monongahela Power Co. v. Reilly</u>, 980 F.2d 272, 275 (4th Cir. 1998) (jurisdictional) <u>with State of New York v. E.P.A.</u>, 133 F.3d 987, 989 (7th Cir. 1998) (venue); <u>Texas Mun. Power Agency v. E.P.A.</u>, 89 F.3d 858, 867 (D.C. Cir. 1996) (per curiam) (venue; citing "unequivocal" legislative history); <u>Harrison v. PPG Indus., Inc.</u>, 446 U.S. 578, 590-91 (1980) (venue; citing legislative history); <u>Sprague v. King</u>, 23 F.2d 185, 188 (7th Cir. 1994) (venue; different statute); <u>Bywater Neighborhood Ass'n v. Tricarico</u>, 879 F.2d 165, 169 (5th Cir. 1989) (venue; different statute).

11

issue with the EPA's argument that a rule is nationally applicable merely because it articulates precedent that could have national effects.

Very few cases have addressed whether a particular EPA action was nationally or regionally applicable. There are certain types of actions that are clearly nationally applicable, for instance, when the EPA issues a rule which applies uniformly nationwide. See N.R.D.C. v. Thomas, 838 F.2d 1224, 1249 (D.C. Cir. 1988) (nationwide regulation); Motor Vehicle Mfrs. Ass'n v. Costle, 647 F.2d 675, 677 (6th Cir. 1981) (nationwide regulation of manufacturers); Dow Chemical USA v. E.P.A., 491 F.Supp. 428, 431 (M.D. La. 1980) (nationwide standards of performance). On the other hand, certain types of actions are clearly regionally applicable, for instance, when the EPA brings an enforcement action against or makes a determination with respect to a particular facility. See Harrison v. PPG Indus., Inc., 446 U.S. 578 (1980) (determining applicability of standards to specific facility); Illinois E.P.A. v. U.S.E.P.A., 947 F.2d 283, 288-289 (7th Cir. 1991) (denial of a grant request). Action with respect to a single SIP, see Madison Gas, 4 F.3d at 530, or only a few states, State of New York v. E.P.A., 133 F.3d 987, 989 (7th Cir. 1998), are also clearly regionally or locally applicable.

The current EPA rulemaking falls somewhere in between these two sets of clear cases. The Ozone Transport SIP Call is not merely action on a single state implementation plan or a few state implementation plans. It represents a coordinated effort to attack a problem that ignores state boundaries, and is based upon a common core of information and analysis involving 37 states, see 62 Fed. Reg. at 60318. On the other hand, the Ozone Transport SIP Call does not create rules for the entire country, and does operate via state-specific budgets.

We are not phased by these facts, though. An EPA rule need not span "from sea to shining sea"[10] to be nationally applicable. Here, the Ozone Transport SIP Call seeks to tackle a problem affecting two-thirds of the country by regulating somewhat less than one half of the states. Contrary to Petitioners' arguments, these SIP calls are not truly

_____

[10] With apologies to Alaska, Hawaii, and the territories and protectorates.

separate and independent. The problem of ozone pollution and ozone transport is such that the efforts of each state in complying with the Ozone Transport SIP Call will have interconnected effects on the ability of other states to comply with the requirements of the rule and the Clean Air Act throughout the country. Cf. State of New York v. E.P.A., 133 F.3d at 989 (noting that local reductions in ozone precursors will reduce ozone in downwind states and increase ozone in surrounding areas). These effects are not speculative. See Madison Gas, 4 F.3d at 529. We acknowledge that precedent from other circuits indicates that the nationally applicable versus regionally applicable analysis should focus on who is regulated, not the effects of the regulation. See State of New York v. E.P.A., 133 F.3d at 990; cf. N.R.D.C. v. Thomas, 838 F.3d at 1249 ("nationwide scope of the regulation is controlling .... If the jurisdiction provision turns on the de facto scope of the regulation, choice of the correct forum might raise complex factual and line-drawing problems."). We conclude, though, that the nationwide scope and interdependent nature of the problem, the large number of states, spanning most of the country, being regulated, the common core of knowledge and analysis involved in formulating the rule, and the common legal interpretation advanced of section 110 of the Clean Air Act, all combine to make this a nationally applicable rule.

Deciding that the Ozone Transport SIP Call is nationally applicable does not settle the matter, however. If Petitioners are challenging a "local factor" of the national program, then venue may still be proper in this Court. See Madison Gas, 4 F.3d at 530. For instance, if Petitioners had challenged the requirements the EPA sought to impose that were unique to West Virginia's NOx budget, then venue might lie in this Court. But Petitioners have challenged a national feature of this nationally applicable action. The RFA certification being challenged by Petitioners is a nationally applicable legal determination, affecting small entities uniformly from Madison, Wisconsin to Worcester, Massachusetts and from Mobile, Alabama to New York City, New York. Cf. Texas Mun. Power Agency v. E.P.A., 89 F.3d 858, 866 n.5 (D.C. Cir. 1996) (per curiam) (challenges to factual determinations more likely to be regionally applicable, while legal challenges likely to be nationally applicable).

13

Petitioners have challenged a national aspect of a nationally applicable rule under the Clean Air Act; therefore, proper venue lies in the Court of Appeals for the D.C. Circuit.

B. "Of Nationwide Scope or Effect"

Since we reach the conclusion that the Ozone Transport SIP Call is nationally applicable we need not address the EPA's contention that the rule is "of nationwide scope and effect." This argument by the EPA raised some troubling issues, especially given that the EPA first came to the conclusion that the Ozone Transport SIP Call was of nationwide scope and effect only after this litigation was well under way. We would be hesitant to allow proper venue to be wholly contingent upon such a post hoc determination by the EPA.

III. CONCLUSION AND ORDER

We find that proper venue to challenge a national aspect of this nationally applicable action of the EPA lies in the D.C. Circuit. Petitioners may have some concerns about the timeliness of a challenge to the RFA certification in the NPRM if we were to dismiss the case. See 42 U.S.C. § 7607(b)(1) (action must be filed sixty days after agency action). We therefore find that it is in the interests of justice and in accord with principles of sound judicial administration to transfer this case to the D.C. Circuit.

IT IS SO ORDERED

14